## IN THE MATTER OF DIXON

Docket No. 54199. Submitted April 7, 1982, at Detroit.—Decided June 8, 1982. Leave to appeal applied for.

Carolyn Braun Dixon filed a petition seeking the release of records pertaining to her adoption. The Wayne County Probate Court, Juvenile Division, James E. Lacey, J., denied her request. Mrs. Dixon appeals alleging error in the failure to properly consider the good cause standard applicable to such actions and the violation of several of her constitutional rights. At the request of the Court of Appeals the Attorney General submitted a brief for the appellee, Michigan Department of Public Health. *Held:*

1. The trial court's decision was not an abuse of discretion.

2. Petitioner did not satisfy the statutory requirement of a showing that both of her biological parents had filed consents to the release of the information sought.

3. The trial court, in making its decision, properly balanced the interests of the adoptee, the biological parents, and the state.

4. The petitioner has not made, as a matter of law or fact, a showing of good cause for the release of her adoption records.

5. Petitioner has not overcome the presumption of constitutionality attached to the statutes involving adoptions.

6. Petitioner was not denied due process because she was not represented by counsel at the proceedings at which she was adopted. Her interests were protected by the state as *parens patriae.*

Affirmed.

1. ADOPTION — RELEASE OF RECORDS — CONSENT OF BIOLOGICAL PARENTS.

Information identifying the biological parents of an adoptee

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 2 Am Jur 2d, Adoption § 12.7.

[5] 5 Am Jur 2d, Appeal and Error § 700.

Restricting access to judicial records of concluded adoption proceedings. 83 ALR3d 800.

[6] 16 Am Jur 2d, Constitutional Law § 212.

[7] 2 Am Jur 2d, Adoption § 48 *et seq.*

adopted prior to 1980 shall be released to the adoptee upon his request if both biological parents have filed consents to the release of such information (MCL 710.68[3]; MSA 27.3178[555.68][3]).

2. ADOPTION — RELEASE OF RECORDS — GOOD CAUSE.

Information identifying the biological parents of an adoptee adopted prior to 1980 may only be released to the adoptee upon order of a court of record for good cause shown where the biological parents have not filed consents to the release of such information; the good cause determination requires a balancing of the adoptee's interests, the biological parents' interest, and the state's interest (MCL 710.67; MSA 27.3178[555.67]).

3. ADOPTION — RELEASE OF RECORDS.

The interests to be balanced in making a good cause determination under the statute regarding records in adoption cases include the biological parents' right to privacy, the state's interest in fostering an orderly and supervised system of adoptions, and most importantly, the adoptee's interests (MCL 710.67; MSA 27.3178[555.67]).

4. ADOPTION — RELEASE OF RECORDS — CONSENT OF BIOLOGICAL PARENTS.

Information identifying the biological parents of an adoptee adopted after 1980 shall be released to the adoptee upon his request unless either biological parent has filed, with the state, a written request that the information not be released (MCL 710.68[4]; MSA 27.3178[555.68][4]).

5. APPEAL — LACK OF AUTHORITY.

A mere statement of position concerning a trial issue without citation of authority will not be considered by the Court of Appeals.

6. CONSTITUTIONAL LAW — STATUTES — PRESUMPTION OF CONSTITU-TIONALITY.

The acts of the Legislature enjoy a presumption of constitutionality which must be overcome prior to a court's finding that an act is unconstitutional.

7. ADOPTION — RIGHT TO COUNSEL.

Michigan does not grant an adoptee child the right to counsel at his or her adoption proceedings; the child's best interests are protected by the state as *parens patriae.*

*Hardig, Goetz, Heath, Merritt & Reebel* (by *Jo-*

*seph L. Hardig, Jr.,* and *David A. Binkley),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Walter V. Kron* and *Vincent J. Leone,* Assistants Attorney General, for defendant.

Before: ALLEN, P.J., and D. C. RILEY and R. R. FERGUSON,* JJ.

D. C. RILEY, J. The appellant presents this Court with a conundrum involving the interpretation of MCL 710.67; MSA 27.3178(555.67) and MCL 710.68; MSA 27.3178(555.68). These sections, which took effect in 1980, outline the process by which adoption records will be released to the adult adoptee or the biological parents and siblings. This is the first opportunity this Court has had to interpret these new sections.

The Wayne County Probate Court denied appellant's request for the release of adoption records so that she could determine her biological parents' identities. Appellant is about 35 years old, is married and has three children. Her adoptive father is deceased and her adoptive mother is living. Appellant does not have a happy and friendly relationship with her adoptive mother.

Appellant has made many unsuccessful attempts to identify and locate her biological parents.[1] The myriad of reasons compelling her search for her natural parents include the need to know her ancestry. Appellant testified before the probate court that she would be discreet in contacting her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Appellant testified that her husband had been supportive of her efforts to locate her biological parents but that he was unaware of the probate court proceeding.

biological mother and would leave her alone if that was her wish. She stated that she had no financial or vindictive reason for locating her natural parents.

Appellant further testified that she suffers from severe depression which she attributes, in part, to the absence of information concerning her biological parents' identities. Her psychiatrist, in an unsworn statement, wrote of her depression which has manifested itself in several near-lethal suicide attempts which required hospitalization.[2]

---

[2] The probate court delayed the hearing in this matter once to allow appellant's psychiatrist an opportunity to testify. Due to a conflict he could not appear and this letter was subsequently presented to the court.

"March 27, 1980.

\* \* \*

"Carolyn Dixon and her attorney have requested that I make a statement regarding her attempt to have her adoption records opened. Before commenting on the particulars of Mrs. Dixon's situation I will make a general comment regarding adoptees and their natural parents.

"It has been my experience that there is generally a deep seated need on the part of adoptees to know their biological origins, regardless of the quality of family life in their adopted families. This desire does not necessarily manifest itself in a wish to form a relationship with their family of origin, but a need to know something of their biological origins. Conversely, I have seen a parallel desire on the part of natural parents to know something of the lives of their biological children. Preventing this information from being available when requested by either party only encourages doubt and uncertainty based on fantasy on the part of the children and guilt on the part of the natural parents.

"I have seen Carolyn Dixon in intensive psychotherapy since August of 1979. She is suffering from a severe depressive illness which has manifested itself in several near lethal suicide attempts and has required two hospitalizations. At present her condition remains guarded. This depression, in fact, has its origins in the severe emotional deprivation she suffered in her adopted family. This deprivation and abuse prevented the establishment of the intimacy and security normally expected of a family which allows for healthy psychological development and the establishment of a secure identity. At present Mrs. Dixon is desperately trying to establish a secure psychological base. The denial of access to her adoption records will only be experienced as a further deprivation and therefore have a negative impact on her condition. It is my opinion that the release of

The probate court, after its hearing, had to interpret the applicable statutes. MCL 710.67; MSA 27.3178(555.67) was amended in 1980 and MCL 710.68; MSA 27.3178(555.68), as well as MCL 710.27; MSA 27.3178(555.27), were adopted for the first time that year. MCL 710.67; MSA 27.3178(555.67) reads, in part, as follows:

> "Except as provided in section 68, records of proceedings in adoption cases * * * shall be kept in separate locked files and shall not be open to inspection or copy except upon order of a court of record for good cause."

The statute proceeds to provide that "[e]xcept as provided in section 68", the court shall not open the records except upon a sworn petition.

Section 68, MCL 710.68; MSA 27.3178(555.68), provides for the release of nonidentifying and identifying information (which terms are defined in MCL 710.27; MSA 27.3178[555.27]) contingent upon various circumstances. Section 68 was added so that when all parties mutually consent to release identifying information, no other requirements need be met. See House Legislative Analysis Section reports on House Bills 4164 and 4165 (April 11, 1979, May 16, 1979, May 21, 1979 and May 12, 1980). This purpose explains why § 68(3) is written so as to provide for the release when the biological parents consent, rather than to provide guidelines when the biological parents refuse to consent to the release or the file contains no indication of the biological parents' desires.

Since the termination of appellant's biological parents' rights occurred before 1980, § 68(3) would be controlling in this case. That section provides that "[a]ll information on both biological parents

---

this information is in the interest of Carolyn's recovery from her depression."

*shall be* released" if both biological parents have consented to the release of such information. (Emphasis added.) The record before us does not indicate that appellant's biological parents have consents on file. This lack of information is to be expected for adoptions prior to 1980 and the establishment of the present system. Unfortunately, § 68(3) does not specifically deal with the lack of information situation. Therefore, the Court turns back to § 67 for guidance. The identifying information then may only be released if the court finds "good cause".

The good cause determination requires a balancing of the adoptee's interests, the biological parents' interest, and the state's interest. Comment: *Breaking the Seal: Constitutional and Statutory Approaches to Adult Adoptees' Right to Identify,* 75 NW U L Rev 316, 340 (1980). It can also be argued that the adopting parents' interests should be considered. *Mills v Atlantic City Dep't of Vital Statistics,* 148 NJ Super 302, 307; 372 A2d 646 (1977). Since appellant in this case is an adult with minimal contacts with her adoptive mother, the adopting parent's interests are diminished. Comment: *Confidentiality of Adoption Records: An Examination,* 52 Tulane L Rev 817, 831 (1978).

The biological parents' interests must be considered based upon conjecture, as they will never be before the court to argue why the information should not be released. Also, no biological parents' rights groups exist to argue against disclosure, similar to the adoptee groups which advocate full release of all information. It is the biological parents' right to privacy which is to be considered by the court. This broad term includes a range of positions from the desire not to be emotionally upset or socially embarrassed to a constitutionally

recognized "right to be let alone". *Mills, supra,*
311-312. We do not attempt to fully delineate the
biological parents' interests in this case.

The interests of the state may be gleaned from
the literature and legislation relating to this issue.
"The State's interest in fostering an orderly and
supervised system of adoptions is closely tied to
[the] interests of the parties involved." *In re Linda
F M v Dep't of Health of New York,* 52 NY2d 236;
437 NYS2d 283, 284; 418 NE2d 1302, 1303 (1981).
The state in pre-1980 adoptions told the biological
parent that the records would be kept sealed,
except for good cause. 1974 PA 296. Most biologi-
cal parents undoubtedly did not even realize the
records could be unsealed. The state entered an
agreement with these adults which it has an inter-
est in fulfilling. We realize that that interest has,
to some extent, been waived by the state. The
evidence of this diminution of interest is the Legis-
lature's adoption of § 68(4). An adult adoptee of a
post-1980 adoption, according to § 68(4), may ob-
tain identifying information upon request, unless
either biological parent has filed, with the state, a
written request that the information not be re-
leased. It is obvious to this Court, even if it is not
obvious to adopting or biological parents, that the
Legislature has changed the basic agreement. A
policy decision has been made in favor of disclo-
sure. It is now up to the biological parent to
prevent disclosure rather than the adoptee to
prove its necessity.

The state's primary concern, "to protect and
foster an effective scheme for adoption", remains,
notwithstanding § 68(4). *Application of Maples,* 563
SW2d 760, 763 (Mo, 1978). The Attorney General,
who submitted a brief in this matter at our re-
quest, notes that anonymity for biological parents

may be necessary to prevent them from simply abandoning a child they are unable to care for. Abandonment of an infant places a new and onerous burden on the state.

The final interest which must be plugged into the good cause equation is that of the adoptee. This interest has generally been recognized as the most important. Compelling medical reasons have constituted good cause for unlocking adoption records. Psychological reasons have also been sufficient on occasion to open the records. Courts are reluctant, however, to disclose when "little more than a thinly supported claim of a 'psychological need to know'" is put forth. *Maples, supra,* 766. The court in *Linda F M, supra,* 437 NYS2d 285; 418 NE2d 1304, addressed that petitioner's psychological need by focusing on the proofs, stating:

"The courts below, however, found that any problems she had encountered in these areas were not credibly connected to her lack of knowledge of her natural parents' identities. To the extent that she was troubled by her lack of knowledge, the courts found that this sprang from mere general curiosity about her parentage, rather than from a concrete and compelling need.

\* \* \*

"[M]ere desire to learn the identity of one's natural parents cannot alone constitute good cause."

Appellant in the case at bar contends that the trial court failed to consider the good cause standard or, alternatively, failed to properly balance the interests and find her "deep seated psychological illness" good cause for opening the records. The probate court's statement that it "need not address itself to the adequacy of Carolyn Braun Dixon's proofs that her psychological needs are 'good cause' shown" is appellant's proof that the

court failed to consider the good cause standard. However, this statement, when read in context, was made in reference to nonidentifying information. The appellant herein was seeking identifying information; the court's final four pages of its opinion did, in fact, balance the competing interests and apply the good cause standard.

We have reviewed the transcript and cannot conclude that the trial court erred in its decision. The probate court did not find appellant's reasons, balanced against the other interests involved here, good cause for opening the records. This decision was not an abuse of discretion. *Bruce v Grace Hospital,* 96 Mich App 627, 632; 293 NW2d 654 (1980). Appellant's testimony at the hearing reveals that she has a general desire to know her biological mother, like the majority of adoptees. She also stated that the information would be helpful to her to complete the total picture of herself and assist her psychiatric treatment.

Appellant's doctor, in a letter dated March 27, 1980, stated that her severe depressive illness stems from the "severe emotional deprivation she suffered in her adopted family. * * * The denial of access to her adoption records will only be experienced as a further deprivation and therefore will have a negative impact on her condition. It is my opinion that the release of this information is in the interest of Carolyn's recovery from her depression". The "deep seated psychological illness" which has been shown is not due to the lack of information about her biological parents as appellant suggests, but to her treatment in her adoptive home. We cannot say that, as a matter of law or fact, petitioner has made a showing of good cause.

Appellant also raises a plethora of constitutional issues. She contends that her Fourteenth Amend-

ment right to life is violated by the state's withholding of the requested information in light of her psychological illness. This position is posited without citation of authority and, therefore, it will not be considered. *Froling v Bischoff,* 73 Mich App 496, 500; 252 NW2d 832 (1977).

Moreover, it is alleged that the applicable statutes involve a fundamental right, the right to life, and, therefore, the state must demonstrate that the legislation serves a compelling interest which cannot be served in any less drastic way. See *Roe v Wade,* 410 US 113, 155; 93 S Ct 705; 35 L Ed 2d 147 (1973). Appellant would have this Court jump unexplored legal chasms by citing to prominent fundamental rights cases. However, none of the cited cases stands for the proposition appellant advances. In *Mills, supra,* the court held that an adoptee's right to privacy was not infringed upon by New Jersey's sealed record statute. That court also considered the right to receive information and the equal protection fundamental rights before reasoning that the statute was constitutional.

The right to life argument of the appellant is tenuous at best. The statutes enjoy a presumption of constitutionality which appellant has not overcome. *O'Brien v Hazelet & Erdal,* 410 Mich 1, 17; 299 NW2d 336 (1980). Furthermore, since MCL 710.67(1); MSA 27.3178(555.67) does not act as a complete bar to adoptees' requests, and good cause can be shown by sufficient psychological need, there is no constitutional conflict to resolve.

The final issue raised is that petitioner was denied due process of law because she was not represented by counsel at the adoption proceedings when she was two years old. No court in the nation has granted the adoptee child a right to counsel. The child's interests are protected by the

state, as *parens patriae.* The adoption statutes are written to protect the best interests of the child, MCL 710.21; MSA 27.3178(555.21), 1 Michigan Law & Practice, Adoption, § 6, p 229. We note that due process requirements vary with the issues involved, *Moyer v Peabody,* 212 US 78, 84; 29 S Ct 235; 53 L Ed 410 (1909). The appellant here was protected with all the process which was due.

We affirm the probate court's order because it balanced the competing interests involved in determining if good cause had been shown. We cannot conclude that the court abused its discretion in reaching its decision. Furthermore, the constitutional challenges are unpersuasive.

Affirmed.

No costs, a public issue being involved.