PETTIS v NALCO CHEMICAL COMPANY

Docket No. 78663. Submitted October 17, 1985, at Detroit.—Decided April 7, 1986. Leave to appeal applied for.

Leon Pettis, an employee of Jones & Laughlin Steel, Incorporated, was injured when molten steel being poured into a mold erupted up out of the mold and splashed on him. Nalco Chemical Company manufactured a product, Nalcosil, used to coat the inside of the molds to protect the molds and make it easier to separate the ingots from the molds. Leon Pettis and his wife, Lula Pettis, filed a products liability action against Nalco Chemical Company in Wayne Circuit Court contending that the eruption of the molten steel was caused by wet Nalcosil in the mold, that Nalco Chemical Company should have put a warning label on the Nalcosil container warning of dangers resulting from improper application, and that defendant should have provided directions as to the proper method of application. At the close of plaintiffs' proofs, defendant moved for a directed verdict. The court, Roland L. Olzark, J., took the motion under advisement. The jury subsequently returned a verdict in favor of plaintiffs for $757,558. The trial court then granted defendant's motion for a directed verdict and entered a judgment of no cause of action, based on its finding that plaintiffs had not proven that Nalcosil was the cause of the eruption. Plaintiffs appealed and defendant cross-appealed, raising several issues to

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 26 et seq.

Am Jur 2d, Judgments §§ 106 et seq.

Am Jur 2d, Products liability §§ 324 et seq.

Am Jur 2d, Trial §§ 463 et seq.

Products liability: modern status of rule that there is no liability for patent or obvious dangers. 35 ALR4th 861.

Admissibility of expert or opinion evidence as to adequacy of warning provided to user of product. 26 ALR4th 377.

Admissibility of expert or opinion evidence that product is or is not defective, dangerous, or unreasonably dangerous. 4 ALR4th 651

Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.

be .addressed in the event that the trial court's reasoning does not support the grant of a directed verdict. *Held:*

1. The trial court erred in granting a directed verdict in favor of defendant on causation grounds. From the evidence presented, the jury could conclude that plaintiffs established the causation element of their prima facie case.

2. Defendant owed a legal duty to provide warnings with its product that over-application of the product could cause an eruption of molten steel from a mold.

3. The jury could rationally conclude that defendant's product was in the mold and that the failure to warn was a proximate cause of plaintiff Leon Pettis's injuries.

4. The trial court did not abuse its discretion in determining that plaintiffs' expert witness was qualified to testify about the need for warning labels in regard to defendants' products.

5. Defendant's allegations of procedural errors in the trial are without merit.

The directed verdict is set aside and the case remanded for reinstatement of the jury verdict.

1. TRIAL — DIRECTED VERDICT — QUESTIONS OF FACT.

The jury, not the trial judge, is the trier of fact, and whenever a fact question exists upon which reasonable persons may differ, the trial judge may not direct a verdict.

2. TRIAL — MOTIONS — DIRECTED VERDICT — EVIDENCE — PRIMA FACIE CASE.

A trial court, in deciding whether to grant a motion for a directed verdict, must accord to the nonmoving party the benefit of viewing the testimony and all the legitimate inferences that may be drawn from it in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

3. NEGLIGENCE — FAILURE TO WARN — BURDEN OF PROOF.

A plaintiff must prove each of the four elements of negligence in order to recover on a failure to warn theory; those elements are: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant violated that duty; (3) that the defendant's breach of duty was a proximate cause of damages suffered by the plaintiff; and (4) that the plaintiff suffered damages.

4. JUDGMENTS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

The Court of Appeals, in reviewing the denial of a motion for a

judgment notwithstanding the verdict, must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence; if reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof, judgment is improper and the question must be resolved by the trier of fact.

5. PRODUCTS LIABILITY — NEGLIGENCE — DUTY TO WARN.

A manufacturer is liable in negligence for a failure to warn the purchasers or users of its product about dangers associated with intended uses and also foreseeable misuses.

6. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE — DUTY TO WARN.

A manufacturer's standard of care includes the dissemination of information, whether styled as warnings or instructions, as is appropriate for the safe use of its product, and the required information must be adequate, accurate, and effective; however, there is no duty to warn or protect against dangers which are obvious to all.

7. NEGLIGENCE — DUTY.

The question of duty is to be resolved by the court rather than the jury.

8. PRODUCTS LIABILITY — MANUFACTURER'S WARNINGS — ADEQUACY OF WARNINGS — QUESTIONS OF FACT.

The adequacy of a manufacturer's warning as to the use of its product is a question for a trier of fact.

9. WITNESSES — EXPERT WITNESSES — APPEAL.

Whether a witness is sufficiently qualified to provide opinion testimony is a decision within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion.

*Harry D. Hirsch, Jr.*, for plaintiffs.

*Tyler & Thayer, P.C.* (by *William J. Liedel*), for defendant.

Before: BRONSON, P.J., and T. M. BURNS and C. W. SIMON,* JJ.

T. M. BURNS, J. Plaintiffs Leon and Lula Pettis

---

* Circuit judge, sitting on the Court of Appeals by assignment.

commenced this products liability action against defendant Nalco Chemical Company seeking to recover damages for injuries suffered by Leon when he was splashed with molten steel while performing his job for Jones & Laughlin Steel, Incorporated, in Warren. The case was tried by jury. At the close of plaintiffs' proofs, defendant moved for a directed verdict. The trial court took the motion under advisement. The jury thereafter returned a verdict in favor of plaintiffs for $757,-558. The trial court subsequently granted defendant's motion for a directed verdict and entered a judgment of no cause of action. Plaintiffs appeal as of right and defendant has filed a cross-appeal, raising several issues to be addressed in the event that the trial court's reasoning does not support the grant of a directed verdict.

Plaintiff Leon Pettis was a member of a team of four or five workers who were responsible for preparing and pouring molten steel into each of six molds. Each mold was approximately six feet tall, three feet long and two feet wide. The first four molds were filled without incident, but during the filling of the fifth mold, molten steel exploded out of the mold and seriously burned plaintiff and three other workers.

All of the witnesses agreed that the explosion was due to moisture in the mold. Because the molten steel is heated to a temperature of about 2,900 to 3,000 degrees, any moisture which comes into contact with it turns very quickly into steam and hydrogen. The tremendous increase in volume when the moisture changes into a gaseous state causes an explosion.

Plaintiff theorized that the explosion was caused by wet Nalcosil in the mold. Nalcosil is a refractory manufactured by defendant. It is used to coat the inside of the mold to protect the mold and to

make it easier to separate the ingot from the mold. It is composed of fine sand and water. It also contains methanol to keep it from freezing in the winter. The proper procedure for application of Nalcosil was apparently to spray it on the surface of a warm mold. The water would then evaporate and the silica sand, which is inert at the temperature to which the steel is heated, would remain to protect the mold. It was common knowledge among the workers that moisture in the mold would cause an explosion when the molten steel was poured. All of the employees who testified, including Leon Pettis, were well aware that Nalcosil was not to be applied to a cold mold because it might not dry and the moisture in it would cause an explosion when the steel was poured in.

While the Nalcosil was supposed to be sprayed on, the workers at Jones & Laughlin sometimes poured it on from a five-gallon bucket when the spray gun was clogged. None of the witnesses who testified knew who had applied the Nalcosil or, in fact, whether it actually had been applied on the date of the incident.

The central issues at trial were (1) whether Nalcosil had been applied to the mold; (2) if it had, whether it was the cause of the explosion; and (3) whether defendant should have put a warning label on the Nalcosil container. Plaintiff contended that defendant should have warned of the dangers associated with Nalcosil, including dangers resulting from improper application, and that defendant should have provided directions as to the proper method of application. The trial court's grant of a directed verdict was based on its finding in relation to the second issue, *i.e.*, that plaintiffs had not proven that Nalcosil was the cause of the explosion.

The standards for directing a verdict are well

established. Whenever a fact question exists upon which reasonable persons may differ, the trial judge may not direct a verdict. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). Conversely, when no fact question exists, the trial judge is justified in directing a verdict. *Id.* In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the nonmoving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. *Id.* If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied. *Id.*

In order to recover on a failure to warn theory, a plaintiff must prove each of the four elements of negligence: (1) that defendant owed a duty to plaintiff; (2) that defendant violated that duty; (3) that defendant's breach of duty was a proximate cause of damages suffered by plaintiff; and (4) that plaintiff suffered damages. *Warner v General Motors Corp,* 137 Mich App 340, 348; 357 NW2d 689 (1984), *lv den* 422 Mich 852 (1985). The trial court found that plaintiff had presented sufficient evidence to create a question for the jury with respect to defendant's duty to warn. The court also concluded that, viewed in a light most favorable to the plaintiff, the evidence would support a finding that Nalcosil was used in the mold in question. Nevertheless, the court concluded that a directed verdict should be granted because the testimony indicated that Nalcosil could not have caused the explosion. The trial court referred to plaintiff Leon Pettis's own testimony wherein he indicated that there may have been a five-minute delay between the initial reaction and the later explosion. The trial court concluded that plaintiffs' expert testimony indicated that Nalcosil could not have been

the cause of the explosion with such a lengthy time delay. We disagree with the trial court's conclusions.

Plaintiff testified that when the pourer began pouring steel into the fifth mold, he heard a crackling and popping which indicated that the mold was wet. The pourer slowed or stopped the stream of steel for "something like" five minutes and then continued pouring. When the mold was one-third or two-thirds full, the steel exploded out of the mold.

Plaintiff also presented the expert testimony of Dr. Charles Nagler, a metallurgical engineer. He testified that delayed reaction explosions could occur. A delayed reaction could result because of a chilling of the metal after an initial explosion when the metal is first splashed into the mold, and a further evaporation of moisture and explosion when more molten steel is poured into the mold. On cross-examination, Nagler stated that the reaction with Nalcosil would be immediate or over a short period of time and that an explosion would take place "in terms of seconds". He stated that there could not have been a five-minute delay. However, on redirect examination, Nagler testified that if Nalcosil had been applied by a bucket, there could have been an initial popping caused by an early evaporation and a slight delay before the explosion, during which time moisture puddled at the bottom of the mold would expand and lift the overlying metal as it worked its way out of the mold. That delay could take until the mold was about one-third full.

From this evidence, a jury could conclude that plaintiffs have established the causation element of their prima facie case. According to plaintiff, the mold may have been one-third full when the steel exploded. The expert witness testified that

the delayed reaction explosion could have been delayed until the mold was about one-third full. Thus, Nalcosil in the mold could have caused the explosion. While there were possible inconsistencies in both witnesses' testimony, such inconsistencies are best resolved by the trier of fact. The trial court erred by granting a directed verdict in favor of defendant on causation grounds.

Defendant raises several issues on cross-appeal, contending that a directed verdict or a judgment notwithstanding the verdict should have been granted on other grounds. We note that the standard of review for a judgment notwithstanding the verdict is similar to that for a directed verdict. In reviewing the denial of a motion for a judgment notwithstanding the verdict, this Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether plaintiffs have satisfied their burden of proof, judgment is improper and the question is to be resolved by the trier of fact. *In re Brack Estate,* 121 Mich App 585, 588; 329 NW2d 432 (1982); *Wilson v Chesapeake & O R Co,* 118 Mich App 123, 133; 324 NW2d 552 (1982), *lv den* 417 Mich 1044 (1983).

Defendant first argues that it had no duty to provide a warning to Leon Pettis or to the other employees of Jones & Laughlin. We disagree. A manufacturer's duty is not just to use reasonable care in the design and manufacture of a product. A manufacturer may have a duty to warn even though a product is perfectly made. A manufacturer is liable in negligence for a failure to warn the purchasers or users of its product about dangers associated with intended uses and also foreseeable misuses. *Antcliff v State Employees Credit Union,* 414 Mich 624, 637-638; 327 NW2d 814

(1982). A manufacturer's standard of care includes the dissemination of information, whether styled as warnings or instructions, as is appropriate for the safe use of its product. *Id.* Such required information must be adequate, accurate, and effective. *Id.* However, there is no duty to warn or protect against dangers which are obvious to all. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158, 160; 174 NW2d 752 (1970).

It is well-settled law that the question of duty is to be resolved by the court rather than the jury. *Antcliff, supra,* p 640. We find that defendant owed a legal duty to provide warnings with its product. While Nalcosil is not classified as a "chemical" by the company, it is not a simple substance which is used in every day life. It is specifically manufactured for use with molten steel. It is not at all obvious to a person of common intelligence that its use could create the danger of an explosion of the steel or of an explosion of such great force as to splatter great quantities of steel out of a large mold. Because the danger of a severe explosion was not obvious, and because it was foreseeable that the product would be applied other than by spraying, there was a duty to warn potential users that over-application of the product could cause an explosion.

Defendant also argues that the failure to warn was not a cause of plaintiff's injuries. While the actual users in this case had knowledge that wet Nalcosil could cause a reaction, they were not aware that the product should not be applied from a bucket and did not know exactly how long it would take the Nalcosil to dry at various temperatures. Even if the testimony establishes a consciousness on the part of the employees of a vague danger, it would not preclude a jury from finding that a warning was nonetheless required to give

them a full appreciation of the seriousness of the life-threatening risks involved. *Michigan Mutual Ins Co v Heatilator Fireplace,* 422 Mich 148, 154; 366 NW2d 202 (1985). The adequacy of a warning is a question for the trier of fact. *Fabbrini Family Foods, Inc v United Canning Corp,* 90 Mich App 80, 92; 280 NW2d 877 (1979). The jury herein could conclude that the total lack of a warning did not give any of the workers a full appreciation for the seriousness of the risks involved. The jury could rationally conclude that the failure to warn was a proximate cause of plaintiff's injuries. The workers poured the molten steel into the molds even though at least one of them had noticed that Nalcosil was splashed on the outside of one or more of the molds, indicating that it had been applied by a bucket.

Defendant also contends that it was pure speculation and conjecture for the jury to conclude that defendant's product was in the mold in which the explosion took place. We disagree. While a case may fail for want of proof because an injury occurs which cannot be accounted for and because the occasion of it rests wholly in conjecture, such cases are rare. An injured person should not be denied a right of action where there is room for balancing the probabilities and for drawing reasonable inferences better supported on one side than on the other. See *Schedlbauer v Chris-Craft Corp,* 381 Mich 217, 230; 160 NW2d 889 (1968), and *Holloway v General Motors Corp (On Reh),* 403 Mich 614; 271 NW2d 777 (1978). Negligence may be established by circumstantial evidence. Plaintiff testified that Nalcosil was splashed on the outside of one or more, but not all, of the molds on the day of the incident. While he did not know which of the six molds had evidence of the Nalcosil on them, the first four molds were poured without

incident. Plaintiffs' expert testified that both the initial reaction and the later reaction were consistent with a Nalcosil explosion, assuming that the Nalcosil was wet. While defendant presented testimony that wet bricks and cans of mud were often used in the area of the molds, there was no non-speculative evidence that either of those items were in any of the molds on the day of the incident. Under these circumstances, the jury could rationally find that defendant's product was in the mold and that defendant's failure to warn was a proximate cause of plaintiff's injuries.

Defendant's next contention is that the trial court erred in allowing plaintiffs' expert witness, Robert Cunitz, to testify as to what sort of warnings defendant should have given about its product. Defendant objected to his testimony on the ground that there had been no showing that he had any knowledge of the steel or chemical industries. MRE 702 governs the admissibility of expert testimony. Defendant's objection at trial went to Cunitz's qualifications to give an expert opinion on warnings. Whether a witness is sufficiently qualified to give expert opinion testimony is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Dybata v Kistler*, 140 Mich App 65, 68-69; 362 NW2d 891 (1985). The witness was an industrial psychologist who specialized in safety and had done considerable consulting on various aspects of safety and warnings. He testified to some experience and familiarity with warnings in the chemical industry. The trial court did not abuse its discretion in determining that Cunitz was qualified as an expert to testify about the need for warning labels in regard to defendant's products.

Finally, defendant contends that there were nu-

merous irregularities in the trial which mandate a new trial. Defendant's allegations of procedural error are meritless. Defendant has failed to cite any authority and has provided very little argument in support of its contentions. Because defendant's positions are posited without citation of authority, we will not consider them. *In the Matter of Dixon,* 116 Mich App 763, 772; 323 NW2d 549 (1982), *remanded on other grounds,* 417 Mich 986 (1983).

The trial court's grant of defendant's motion for a directed verdict is set aside and the case is remanded to the circuit court for reinstatement of the jury verdict.