866 F.2d 431
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert DeROSEAU, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 Nos. 87-1959, 88-1153.
 United States Court of Appeals, Sixth Circuit.
 Jan. 20, 1989.
 
 Before MERRITT, BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert DeRoseau appeals the district court's summary judgment order dismissing his claim under the Michigan Handicappers' Civil Rights Act, M.C.L.A. Sec. 37.1101 as preempted by Sec. 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185. We hold that DeRoseau's claim of handicap discrimination is not preempted by Sec. 301 and therefore reverse the decision of the district court.
 
 
 2
 Ford Motor Company hired DeRoseau as a test driver in November 1972. As an employee of Ford, DeRoseau was subject to the terms of the collective bargaining agreement between Ford and the United Auto Workers, which included provisions concerning the discharge and release of employees and which required complaints regarding discharge and release to be resolved through a four-step grievance procedure that culminated in binding arbitration. In January 1987, Ford released DeRoseau for being physically unable to perform required work due to a permanent ankle problem.
 
 
 3
 Ford contends that DeRoseau's release was in accordance with a provision of the collective bargaining agreement allowing Ford to release employees "at company option." However, DeRoseau's union representative filed a grievance on his behalf, and, in March 1987, DeRoseau also filed an action against Ford in Wayne County Circuit Court under the Michigan Handicappers' Civil Rights Act. Ford removed the case to district court, asserting federal question jurisdiction under Sec. 301 of the Labor-Management Relations Act. DeRoseau subsequently moved to have the case remanded to state court. The district court denied the motion for remand, stating that DeRoseau's state law claim of handicap discrimination was preempted by Sec. 301.
 
 
 4
 In June 1987, Ford filed a motion for summary judgment, seeking dismissal on the grounds that (1) DeRoseau's state law claim had already been found by the court to be preempted by Sec. 301, and (2) any Sec. 301 claim was barred by DeRoseau's failure to exhaust the four-step grievance procedure existing under the collective bargaining agreement. The district court granted summary judgment to Ford in August 1987, holding that DeRoseau's state law claim was preempted by Sec. 301 and that any Sec. 301 claim was barred by his failure to exhaust the available grievance procedure. In September 1987, DeRoseau filed a motion for reconsideration, which was denied.
 
 
 5
 On appeal, DeRoseau argues that his handicap discrimination claim under Michigan law was improperly removed to federal court and that Ford's motion for summary judgment was improperly granted because his claim should not be held preempted by Sec. 301. Recent decisions of the Supreme Court and this Circuit dealing with the preemptive effect of Sec. 301 must govern our determination of DeRoseau's appeal.
 
 
 6
 In Allis-Chalmers Corporation v. Lueck, 471 U.S. 202 (1985), the Supreme Court held that a state law claim is preempted by Sec. 301 when resolution of the claim is substantially dependent on the analysis of the terms of a collective bargaining agreement. The court further clarified the meaning of a "dependent" state law claim in Lingle v. Norge Dvision of Magic Chef, Inc., 108 S.Ct. 1877 (1988), in which a state law claim was found to be "independent" of a collective bargaining agreement for Sec. 301 preemption purposes because resolution of the state law claim of retaliatory discharge did not require construing the collective bargaining agreement. The Court in Lingle moreover stated that, even if the resolution of a dispute pursuant to a collective bargaining agreement and to state law would "require addressing precisely the same set of facts," such "parallelism" would not render the state law claim dependent upon the collective bargaining agreement so long as the state law claim could be "resolved without interpreting the agreement itself." Lingle, 108 S.Ct. at 1882-83. Most significantly, this Circuit, in Smolarek, et al. v. Chrysler Corporation, Nos. 86-2074/87-1387 (6th Cir. Oct. 3, 1988), has recently applied Lingle to state law claims under the Michigan Handicappers' Civil Rights Act. In Smolarek, plaintiffs Smolarek and Fleming filed, inter alia, handicap discrimination claims in state court under the Handicappers' Civil Rights Act, contending that Chrysler dismissed them because of their medical conditions. Chrysler removed both claims to federal district court. The district court denied Smolarek's motion to remand his case to state court on the grounds that Sec. 301 preempted his claim and also dismissed, on summary judgment, Fleming's claim as preempted by Sec. 301. On appeal, we reversed, holding that the district court erred (1) in refusing to remand Smolarek's claim to state court because his complaint under the Handicappers' Civil Rights Act presented no question of federal law, and (2) in dismissing Fleming's claim on summary judgment because his claim under the Handicappers' Civil Rights Act was not preempted by Sec. 301.
 
 
 7
 On the basis of Smolarek, we reverse the decision of the district court in this case. Under the Handicappers' Civil Rights Act, DeRoseau must, to establish prima facie liability, show that Ford took adverse employment actions against him and that Ford's actions were motivated by his handicap. According to Smolarek, these questions are purely factual ones, relating to the conduct and motivation of Ford and not requiring a court to interpret the collective bargaining agreement between Ford and the United Auto Workers. Smolarek, at 11-12. Consequently, DeRoseau's state law claim is sufficiently independent of the collective bargaining agreement so as not to be preempted by Sec. 301. Because DeRoseau's claim under the Michigan Handicappers' Civil Rights Act is not preempted by Sec. 301, we reverse both the district court's order denying DeRoseau's motion to remand and the district court's order dismissing DeRoseau's claim. The judgment of the district court is reversed.
 
 
 8
 MERRITT, Circuit Judge, dissenting.
 
 
 9
 Ford Motor in its appellate briefs accurately summarizes the record regarding the discharge of plaintiff, a test driver:
 
 
 10
 On or about July 28, 1986, plaintiff returned from a medical leave of absence (related to a broken ankle) with a medical restriction limiting him to driving automatic transmission vehicles only. This restriction was accommodated and plaintiff returned to work. On or about January 5, 1987, plaintiff submitted a letter from his personal physician, indicating that plaintiff's medical condition required more stringent and permanent restriction and recommending that he be placed in a "sitting" job. After consulting with plaintiff's physician, the Company physician imposed a permanent restriction limiting plaintiff to jobs involving automatic transmission driving only and limited braking.
 
 
 11
 Because test driving requires regular braking and the "limited braking" restriction imposed in plaintiff's case was permanent, Ford determined that plaintiff was no longer qualified for his primary duties and that there was no other position available for which DeRoseau was qualified. Therefore, pursuant to the terms of the CBA, plaintiff was "released at company option."
 
 
 12
 (Appellee Brief, p. 4).
 
 
 13
 Ford then argues its preemption claim as follows:
 
 
 14
 DeRoseau's claim was based entirely on Ford's decision to release him "at Company option" in January, 1987. Article V, Sec. 3 of the CBA expressly authorizes the release of employees at Company option "for the reasons ... provided by Company policy for other salaried employees in similar employment status." The section further provides that the grievance procedure is available to an employee complaining that such a reason for release was not present. DeRoseau's claim simply could not be resolved without referring to and interpreting these provisions of the CBA.
 
 
 15
 DeRoseau does not dispute that he was a member of a collective bargaining unit, that he was released under the authority of a specific provision of the CBA or that, under the express language of the CBA, the Company's decision was subject to challenge in the grievance procedure. Quite to the contrary, the record establishes that DeRoseau did, in fact, file a grievance in which he alleged that his termination was in violation of the CBA. However, for reasons not explained in the record below or in the brief filed in this Court, he simply refused to wait for completion of the contractual greivance resolution procedure, opting instead to launch a second attack on Ford's decision under the guise of a handicap discrimination claim.
 
 
 16
 Appellee's brief pages 13-14. The Court has not satisfactorily answered this argument.
 
 
 17
 The arbitrator must decide (1) whether the cited provision of the collective bargaining agreement requires Ford to accommodate plaintiff's injury by giving him another job which his injury allows him to perform; (2) if so, the type of job the collective bargaining agreement rquires Ford to provide in place of plaintiff's old job; (3) whether such a job is available or will become available within a reasonable time; and (4), if not, what "benefits provided by the Company policy for other salaried employees in similar employment status" (Article V, section 3 of the CBA) must be provided upon "release" by Ford.
 
 
 18
 In order to "accommodate a handicapper for purposes of employment," and to determine whether plaintiff's handicap "is unrelated to the individual's ability to perform," within the meaning of Michigan law Secs. 37.1102(2), 37.1202(1)(b), M.C.L., the state court must necessarily interpret the "release" provision of the CBA, the nature and reasonableness of Ford's policy of accommodation under the CBA and the rules and practices of the workplace regarding accommodation. In other cases, Michigan courts have recognized that they must interpret the CBA to decide a handicapper's claim of accommodation. For example, in Rancour v. Detroit Edison Co., 388 N.W.2d 336 (Mich.App.1986), a factually similar case in which the preemption issue was not raised or addressed, the Court said:
 
 
 19
 Pursuant to the terms of a collective bargaining agreement negotiated between defendant and plaintiff's union and pursuant to company policy, the superintendent of the motor transportation division looked within his division for another position to which plaintiff might be transferred. Upon learning that nothing was available in his immediate division, the superintendent sent a memo dated August 28, 1980, to the employment director requesting a company-wide search for available positions compatible with plaintiff's limitation.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 Defendant admits that company policy and the terms of a collective bargaining agreement applicable to plaintiff required some effort at placing plaintiff in another position compatible with his limitations and at a pay rate as close as possible to the rate he received in his former job.
 
 
 23
 388 N.W.2d 338, 342. The state court in Rancour also had to decide whether the arbitrator's decision interpreting the CBA with respect to accommodation should be admitted into evidence. The court rejected the evidence of the arbitrator's interpretation because "there was a legitimate danger that the jury might be unduly influenced by the arbitration." 388 N.W.2d 343. It is apparent that in the state case there is no way around interpreting the accommodation duties of the employer imposed under the CBA in light of the practices of the workplace. Defining these duties is also the job of the arbitrator.
 
 
 24
 The Supreme Court, and our previous cases, have made it very clear that state law is preempted when the dispute between the parties makes reference and interpretation of the CBA by the arbitrator necessary.
 
 
 25
 In Lingle v. Norge Division of Magic Chef, Inc., 108 S.Ct. 1877, 1884 (1988), the Court clearly stated the principle of preemption to be applied:
 
 
 26
 Today's decision should make clear that interpretation of collective bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor management relations only if such questions do not require construing collective bargaining agreements.
 
 
 27
 This principle must be enforced, the Court said, because:
 
 
 28
 A rule that permitted an individual to side-step available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor contract law under Sec. 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.
 
 
 29
 (Quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)).
 
 
 30
 Our own case of McCall v. Chesapeake & Ohio Railway Company, 844 F.2d 294, 301 (1988), makes it clear that the Michigan handicap statute is preempted when the question of "job relatedness" under a collective bargaining agreement and the Michigan statute overlap:
 
 
 31
 The jury in McCall's state action had to decide whether McCall's diabetes is a handicap that is unrelated to his ability to perform the duties of his job. Thus, the arbitration board and the jury had to make essentially the same decision--whether McCall is physically able to perform the duties of his job.
 
 We went on to hold:
 
 32
 If the handicap is job related, management has authority under the collective bargaining agreement to terminate. Thus, the state law handicap action necessarily requires an interpretation of the collective bargaining agreement concerning the job relatedness of the employee's handicap. Lingle holds that in such cases requiring contract interpretation the state law action must be preempted.
 
 
 33
 Id. at 304.
 
 
 34
 Plaintiff in the instant case filed both a grievance proceeding asking the arbitrator to construe the CBA to require accommodation of his handicap and a state law action asking the state court to construe state law to impose the same requirement. If the arbitrator says the handicap is job related under the CBA and no accommodation is possible, and if the state court says the opposite, we will have a head on collision--discharge permitted under the contract vs. discharge not permitted under the contract. The entire relationship between the plaintiff and Ford is contractual. It is impossible to define the rights and duties of the parties on the question of job relatedness and accommodation without defining Ford's right to discharge under the CBA.
 
 
 35
 The Smolarek case relied on by the court, unfortunately, is in direct conflict with McCall, decided two months earlier, as well as in conflict with Lingle. The Smolarek decision does not mention McCall. Thus, we have a direct conflict within the Circuit. I would adhere to the better reasoned opinion in McCall, and I therefore dissent.