932 F.2d 968
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Malcolm R. HARBOUR, Personal Representative of the Estate of
Raymond J. Harbour, Deceased, Plaintiff-Appellant,
v.
ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants,
Owens-Illinois, Inc., Defendant-Appellee.
 No. 90-1414.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1991.
 
 Before BOYCE F. MARTIN, JR. and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Malcolm Harbour, the personal representative and plaintiff on behalf of his late father, Raymond J. Harbour, appeals from the district court's grant of a directed verdict for defendant Owens-Illinois.[1] Harbour also appeals from the district court's order bifurcating the trial, and from the court's quashing of three notices of depositions to be taken by Harbour. Because we believe that the directed verdict was properly granted, and that the court did not abuse its discretion in quashing the deposition notices and in ordering the trial bifurcation, we affirm the judgment.
 
 
 2
 * Raymond Harbour worked as a chemical engineer and supervisor for Dow Chemical from 1943 until 1979. During that time, he worked at Dow plants in Torrance, California and Midland, Michigan. Mr. Harbour died from mesothelioma in 1988, and his son filed this product liability suit alleging that Owens-Illinois was negligent in permitting the decedent to contract mesothelioma through occupational exposure to defendant's asbestos product during his work at the Torrance plant from 1948 to 1955.
 
 
 3
 Plaintiff's suit was originally scheduled for trial as part of a consolidated trial with three other asbestos product liability suits. All four cases were originally scheduled for trial on Tuesday, January 20, 1990. Discovery for these cases was to end on January 15, 1990. The other three cases settled the night before trial, leaving only plaintiff's action before the court.
 
 
 4
 Counsel for Owens-Illinois moved on the morning of trial to bifurcate the trial and try the issue of medical causation first. The court granted defendant's motion, but amended it so that the issue of product identification would also be tried first. Plaintiff's counsel objected to the motion, arguing that the bifurcation would not save time. The court disagreed, telling plaintiff's counsel that "I am not trying to be mysterious. If the jury decides against you, we have gained time.... If the jury decides in your favor, we have not lost time." Plaintiff's counsel did not argue that plaintiff would be prejudiced by the bifurcation.
 
 
 5
 After the bifurcation motion was granted, the trial was postponed until Thursday, January 22. Plaintiff's counsel then served notices of depositions that he proposed to take over the next four days. Plaintiff proposed taking three videotaped depositions for the purpose of admitting the videotapes as evidence. The proposed deposition of medical expert Dr. Albert Miller was to be taken on Thursday night in New York. The other two proposed depositions were to be of product identification witnesses, Richard Shively and Frank Lyle. Both of the witnesses lived in Southern California, and the depositions were to be taken on Saturday afternoon and evening.
 
 
 6
 Councsel for Owens-Illinois moved to quash all three notices as being untimely, burdensome, and oppressive. Owens-Illinois noted that all three witnesses had been listed on plaintiff's witness list since August 1989, and that such extensive travel during the trial was burdensome. Plaintiff's counsel explained that he delayed in taking the depositions because he thought the case might settle, and he did not want to incur the added expense. The district court quashed all three notices.
 
 
 7
 The trial began on Thursday morning. Plaintiff's counsel presented two witnesses; the plaintiff, Malcolm Harbour, and a medical expert, Dr. Bernard Naylor. Harbour spent little time on the stand. The only testimony relevant to this appeal was that his father told him two months before he died that "it rained asbestos" when he worked at the Torrance plant. Dr. Naylor's testimony was more extensive. He stated that mesothelioma was almost always caused by asbestos exposure, and that only a small exposure over a few months time was necessary to cause the disease. Based on a letter sent to him by plaintiff's counsel, which stated that Harbour had been routinely exposed to asbestos during his twelve years at the Torrance plant, Dr. Naylor concluded that Harbour's mesothelioma was caused by occupational exposure to asbestos. On cross-examination, however, Dr. Naylor testified that the slides containing tissue samples from Harbour's lungs did not indicate an occupational exposure to asbestos. He stated that he required a well-documented history of an occupational exposure to conclude that Harbour's disease was caused by asbestos, and that he relied on plaintiff's employment history for that foundation.
 
 
 8
 Plaintiff was unable to present any more witnesses after Dr. Naylor stepped down. The trial court noted its displeasure at this, but adjourned the court until Friday to allow plaintiff's counsel to present a product identification witness, William Seaman.
 
 
 9
 Seaman was the only witness who purported to identify Owens-Illinois's asbestos product, Kaylo, as being in Harbour's vicinity at the Torrance plant. Seaman testified that he had worked as a pipefitter and pipecutter at the Dow plant in Torrance from 1951 through 1954. He estimated that he had worked for up to a year at the plant during that time, moving in and out of the plant as various projects developed and were completed.
 
 
 10
 Seaman testified that he knew that Harbour was a company supervisor, and that he saw Harbour around his work station at the plant. Seaman did not see Harbour on a regular basis; he would see Harbour "sometimes every day, sometimes not for a week." Harbour's stays at Seaman's worksite also varied in duration, lasting from a few minutes to most of the morning or afternoon. Seaman testified that insulation work involving asbestos pipe insulation occurred within 50 feet of his work station, that the air was filled with dust from the asbestos work, and that Harbour was breathing when he came to Seaman's station.
 
 
 11
 Seaman's testimony showed that he did not know much about Harbour and his position. Seaman was unable to explain what Harbour's job was, aside from general supervision. Harbour was not Seaman's supervisor, and Seaman could not remember any conversation with Harbour beyond saying things like "hi, how are you doing, what is going on, talk to you later." Seaman testified that "walking in, looking, standing" was what supervisors did.
 
 
 12
 Plaintiff rested his case after Seaman testified. Owens-Illinois then moved for a directed verdict. The court granted the motion on Monday, January 26 because the testimony of plaintiff and Seaman had failed to establish that Harbour had a "well-documented occupational history" of exposure to asbestos, and therefore Dr. Naylor's testimony that Harbour's mesothelioma was caused by asbestos exposure lacked a sufficient foundation. Plaintiff's appeal followed.
 
 II
 
 13
 We must review directed verdicts under the same standard as that used by the district court. Sawchik v. E.I. DuPont Denemours & Co., 783 F.2d 635, 636 (6th Cir.1986); Hersch v. United States, 719 F.2d 873 (6th Cir.1983). This is a diversity case, and a directed verdict motion offered in a diversity case pursuant to Fed.R.Civ.P. 50(a) must be examined under the appropriate state's standard. Rhea v. Massey-Ferguson, Inc., 767 F.2d 266 (6th Cir.1985). Michigan law, which without dispute governs this case, requires a court to examine the plaintiff's evidence and draw all reasonable inferences therefrom in the plaintiff's favor. Matras v. Amoco Oil Co., 424 Mich. 675, 385 N.W.2d 586 (1986). If reasonable minds could differ as to a fact necessary to the plaintiff's case, the motion must be denied. Pettis v. Nalco Chemical Corp., 150 Mich.App. 294, 388 N.W.2d 343, appeal denied, 486 Mich. 881 (1986); Caldwell v. Fox, 394 Mich. 401, 231 N.W.2d 46 (1975). Evidence derived from the cross-examination of a witness for the plaintiff may be considered by the court in deciding the motion. Dengler v. State Farm Mutual Insurance Co., 135 Mich.App. 645, 354 N.W.2d 294 (1984), appeal denied.
 
 
 14
 Michigan law establishes that to prove negligence in a product liability action, a plaintiff must show that the product was at the worksite in question ("product identification"), and that the product was a "substantial factor" in causing the injury. Brisboy v. Fibreboard Corp., 429 Mich. 540, 418 N.W.2d 650 (1988). See Abel v. Eli Lilly & Co., 418 Mich. 311, 343 N.W.2d 164 (1984), cert denied E.R. Squibb & Sons, Inc. v. Abel, 469 U.S. 833 (1984); Caldwell, 231 N.W.2d at 54. It is not necessary to show that defendant's product--in this case and in Brisboy, asbestos--was the direct and sole cause of the injury when plaintiff establishes that asbestos dust caused the injury and that plaintiff was clearly subjected to repeated and heavy asbestos exposure. Brisboy, 418 N.W.2d at 653-54.
 
 
 15
 Owens-Illinois asks us to read Brisboy--which involved asbestosis rather than mesothelioma--as preventing a plaintiff alleging injury from mesothelioma from relying merely on plaintiff's extensive exposure to asbestos in order to prove medical causation. It asks us to do that because asbestosis is a cumulative disease; with each new exposure causing a new injury, while mesothelioma is irretrievably set in motion once a certain level of exposure is reached, and subsequent exposures have no effect on the progress or severity of the disease. Thus, defendant argues, permitting a plaintiff to show medical causation merely by showing extensive exposure to asbestos products would improperly make some innocent defendants liable for injuries that they did not cause, as plaintiff's mesothelioma may have been caused by a previous exposure to another company's asbestos products.
 
 
 16
 We decline to adopt this position because we agree with the district court that the evidence, even when viewed most favorably to the plaintiff, does not even meet the more lenient interpretation of Brisboy. No reasonable jury could find that Harbour was extensively exposed to asbestos products during his tenure at the Torrance Dow plant. Plaintiff must show this in order to recover, as his only evidence of medical causation, Dr. Naylor's testimony, explicitly rested on the assumption that Harbour had a history of occupational asbestos exposure. While plaintiff contends that his and Seaman's testimony can establish that history, we disagree.
 
 
 17
 Seaman's testimony can at most be read to establish that Harbour was occasionally present when asbestos dust was in the air. Seaman's contact with Harbour was fleeting. Seaman did not see Harbour regularly, "sometimes not for a week." Harbour did not spend much time near Seaman even on those rare occasions when Harbour was present. Seaman testified that Harbour's presence would vary from a few minutes to most of the morning or afternoon. This sporadic presence is evidenced by the extremely superficial level of their conversations. Simply exchanging daily pleasantries is a sign that Harbour was only an occasional visitor to Seaman's work area, a visitor whose presence was recalled by Seaman only because of his apparent authority with the company.
 
 
 18
 We do not believe that a reasonable person can conclude that Seaman's testimony proves that occupational asbestos exposure was a substantial factor in Harbour's death. Harbour's level of exposure is much less than that found in Brisboy, where "[t]he proofs established that [decedent] suffered repeated and heavy exposure to [asbestos products] for a period of six to nine months." Brisboy, 418 N.W.2d at 654. Brisboy adopted the "substantial factor" test contained in Restatement (Second) of Torts Sec. 431 (1977), and comment a to Sec. 431 clearly states that a factor must be more than a "philosophic" cause of the injury to be substantial. We read Brisboy as requiring a plaintiff relying on circumstantial evidence of exposure to prove causation to show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural. In other words, substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.
 
 
 19
 Plaintiff's counsel's argument before the court in opposition to the motion for a directed verdict demonstrates that he does not disagree with this formulation. He argued that the motion should be denied because the time that Harbour was exposed to asbestos greatly exceeded the time of exposure necessary to cause mesothelioma.
 
 
 20
 Dr. Naylor's testimony was that an exposure of as little as three months could be implicated as the cause of mesothelioma, and I submit that the evidence which I have presented through the testimony of Mr. Seaman was that there was an exposure for a period of approximately one year.... From the standpoint of medical causation, your Honor, Dr. Naylor's testimony that as little as five months exposure is sufficient to cause mesothelioma. And Dr. Naylor's testimony concerning the latency period, along with the evidence of exposure for approximately a one year period, certainly is enough evidence at this stage ... to defeat a motion for directed verdict.
 
 
 21
 We agree that this sort of comparison of actual time of exposure to that level of exposure necessary to cause the injury complained of is the correct approach. However, whether the minimum period of exposure necessary to cause mesothelioma was three or five months, we do not see how a reasonable jury could conclude from Mr. Seaman's testimony that Harbour was regularly exposed to asbestos for a sufficient period.
 
 
 22
 Plaintiff's testimony does not strengthen his case. Plaintiff merely testified that "it rained asbestos" at the plant during Harbour's tenure there. He said nothing about Harbour's duties, the frequency of his exposure to asbestos, or anything else that could show that Raymond Harbour regularly breathed asbestos dust for a period of many months. We therefore affirm the district court's grant of the directed verdict.
 
 III
 
 23
 We also affirm the district court's order to bifurcate the trial into two phases, the first of which would concentrate solely on the issues of product identification and medical causation. It is clear that a district court may decide to bifurcate a trial to avoid prejudice or for reasons of judicial economy. Fed.R.Civ.P. 42(b). This decision is committed to the discretion of the district court, Yung v. Raymark Industries, Inc., 789 F.2d 397 (6th Cir.1986), and we review its decision under an abuse of discretion standard. Taylor v. United States Parole Commission, 734 F.2d 1152 (6th Cir.1984). We have previously approved the practice of bifurcating a trial to separate issues of causation from other issues in the trial. In Re Benedictin Litigation, 857 F.2d 290 (6th Cir.1988), cert. denied Hoffman v. Merrell Dow Pharmaceuticals, Inc., 488 U.S. 1006 (1989).
 
 
 24
 We believe the court did not abuse its discretion. The court granted the motion to save time, as plaintiff had no prima facie case if he could not prove product identification and medical causation. Plaintiff's argument on appeal is that the court abused its discretion because he was prejudiced by the bifurcation. Plaintiff specifically argues that he was forced to alter his order of proof because of the late bifurcation, thereby preventing him from fully presenting his case. We reject plaintiff's argument primarily because he did not present it to the district court at the time the bifurcation motion was made. Plaintiff merely argued that the bifurcation would not save time, and never even hinted at any problems the bifurcation caused for his order of proof and witness availability. A party may not allege a ground for reversing a court ruling that was not presented to the court at the time the objection was made. Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708 (6th Cir.), cert. denied, 423 U.S. 987 (1975).
 
 
 25
 We also find that plaintiff has failed to prove that the bifurcation caused him any prejudice even if he had raised the issue before the district court. Plaintiff never states, either below or on appeal, that a particular witness was prevented from testifying because of the bifurcation. Plaintiff's counsel clearly stated to the contrary, that he had not even deposed his potential witnesses because he had thought the case might settle and he did not want to incur the expense. Under these circumstances, it cannot be said that the district court abused its discretion in granting the bifurcation motion.
 
 IV
 
 26
 As a final matter, we affirm the district court's quashing of plaintiff's three last-minute notices of discovery. We review decisions of the district court regarding the scope of discovery under an abuse of discretion standard. Maxey v. Reynolds Metal Co., No. 85-5778 (6th Cir.1986), citing Humble v. Mountain State Construction Co., 441 F.2d 816 (6th Cir.1971). Fed.R.Civ.P. 26(d) clearly permits the court to set the timing of discovery "for the convenience of the parties and the witnesses and in the interests of justice." Although plaintiff contends that the court's action was an improper exclusion of evidence because the depositions were the most efficient way of producing the evidence after the bifurcation motion was granted, we find that the court properly exercised its discretion under Rule 26(d). Plaintiff knew he might need these witnesses since at least August 1989. He had ample time to depose them or arrange for their travel, and the court was under no obligation to save counsel from the consequences of his trial tactics.
 
 V
 
 27
 For the foregoing reasons, the opinion of the district court is AFFIRMED in all respects.
 
 
 
 [1]
 All of the other defendants, including Armstrong World Industries, had been dismissed prior to trial