GREENE v A P PRODUCTS, LTD

Docket No. 249113. Submitted November 9, 2004, at Detroit. Decided November 23, 2004, at 9:00 a.m. Leave to appeal sought.

Cheryce Greene, as the personal representative of the estate of her deceased eleven-month-old son, Keimer Easley, brought a product liability action in the Wayne Circuit Court against A.P. Products (A.P.); Revlon Consumer Products Corporation, A.P.'s successor corporation; and Super 7 Beauty Supply, Inc. (Super 7), and its predecessor corporations, as well as Raani Corporation, seeking damages for Keimer's wrongful death caused by the ingestion of a hair and body moisturizing product produced by A.P. and sold by Super 7. The product's label did not warn that it should be kept from the reach of children or that it was toxic and potentially fatal. The court, Kaye Tertzag, J., granted summary disposition for Raani Corporation, which decision is not on appeal. The court later granted summary disposition for the remaining defendants, having determined that the dangers arising from ingestion of the product were open and obvious and that the plaintiff had sufficient knowledge of the dangers to obviate any requirement to warn her of the dangers, and that the plaintiff's affidavit contradicted her deposition testimony regarding the proximate cause of the injury. On appeal, the plaintiff argued that ingestion by a toddler was a reasonably foreseeable misuse of the product, requiring a warning label or childproof packaging, and that she presented sufficient evidence to establish a claim of breach of implied warranty, while the remaining defendants argued that they are absolved from a duty to warn because the duty to protect an infant rests with the plaintiff parent.

The Court of Appeals *held*:

1. Whether a warning on the package was required, whether the package was properly labeled, and whether proximate cause was established are issues for the jury to decide. The trial court erred in granting summary disposition for the defendants and in dismissing the plaintiff's claims premised on breach of implied warranties.

2. An open and obvious danger associated with a product in the eyes of an adult may not be open and obvious to a toddler. An adult

ingesting the product is not a reasonably foreseeable misuse, but ingestion by a toddler could be. A reasonable jury could conclude that the product would have been used and treated differently by the plaintiff had warnings on the label been given, reducing the potential for the product ending in the child's hands, being consumed, and killing him.

3. Although there is no duty to warn someone of a risk of which that person is knowledgeable, in this case a jury should determine whether the plaintiff had some knowledge of possible harm less than a full appreciation of the seriousness of the life-threatening risks involved.

4. For goods to be merchantable, they must be adequately contained, packaged, and labeled. The trial court erred in dismissing claims premised on breach of implied warranties. Super 7 is not necessarily exempt from liability for breach of the implied warranty of merchantability on the basis of not being the manufacturer.

Reversed and remanded for further proceedings.

PRODUCTS LIABILITY — DUTY TO WARN — OPEN AND OBVIOUS DANGERS.

Where reasonable minds can differ over the open and obvious nature of a danger associated with a product, the obviousness of the danger and whether the product manufacturer or seller should have warned a user about the danger are questions that must be determined by a jury.

*McKeen & Associates, P.C.* (by *Brian J. McKeen* and *Ramona C. Howard*), for Cheryce Greene.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *Edward J. Higgins*), for A.P. Products, Ltd., and Revlon Consumers Products Corporation.

*Kaufman and Payton* (by *Howard S. Weingarden*) for Super 7 Beauty Supply, Inc.

Before: BORRELLO, P.J., and MURPHY and NEFF, JJ.

MURPHY, J. In this wrongful death product liability action, plaintiff Cheryce Greene, as personal representative of the estate of Keimer Easley, deceased, appeals

as of right the order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10). This case arose after plaintiff's eleven-month-old son Keimer died from ingesting a hair and body care product manufactured by A.P. Products (A.P.)[1] and sold by Super 7 Beauty Supply. The product did not contain any warning that it should be kept out of the reach of children or that it was toxic and potentially fatal, let alone harmful, if ingested, and it did not provide any information on how to respond to accidental ingestion. Although plaintiff's own deposition testimony revealed her understanding that the hair and body care product could possibly cause some level of nonlethal harm if ingested, and although reasonable persons might agree that it is open and obvious that some level of nonlethal harm can result from ingesting the product, the extreme degree of harm, danger, and toxicity and the potential of death from ingestion, considered with the documentary evidence presented, precludes summary disposition. Accordingly, we reverse.

I. FACTS—DOCUMENTARY EVIDENCE

In April 1999, plaintiff purchased a bottle of Ginseng Miracle Wonder 8 Oil, Hair & Body Mist—Captivate (Wonder 8 Oil) from Super 7 Beauty Supply. Wonder 8 Oil is marketed to the African-American community as a hair and body moisturizer. This was the first time plaintiff had purchased Wonder 8 Oil, and, although she had never heard of it or seen it advertised, she was

---

[1] Defendant Revlon acquired A.P. Products and is A.P. Products' successor corporation. We also note that summary disposition was granted in favor of defendant Raani Corporation as well as the other defendants; however, plaintiff did not list Raani as an appellee, nor does plaintiff make any reference to Raani in her appellate brief, and Raani has not filed an appellee's brief. Therefore, we decline to disturb the trial court's ruling dismissing Raani.

drawn to the product because it was something new that caught her eye. After noticing that it was natural oils with "good ingredients," she decided to give it a try. Plaintiff stated that some of the ingredients, like coconut oil, carrot oil, and various vitamins, were familiar to her, but other ingredients were not. The bottle contained no warnings indicating that the product contained hydrocarbons, that it was toxic and potentially fatal if swallowed, or that it should be kept out of the reach of children. Also, the bottle was not equipped with any type of childproof safety device.[2]

Plaintiff started using the Wonder 8 Oil the morning after the purchase and continued to use it every other morning. Plaintiff stated that when she was not using the product, she always kept it in the medicine cabinet located above the sink in her bathroom. Keimer could not reach products in the medicine cabinet on his own.

On June 28, 1999, plaintiff's thirteen-year-old niece was babysitting for Keimer while plaintiff was at work. Plaintiff returned home and found her niece and son sitting on the front porch. Plaintiff and her niece talked for a few minutes and then went into the house. Plaintiff put Keimer in his playpen and told her niece to leave him there while plaintiff went upstairs to program a new television in her bedroom.

Plaintiff was sitting on her bed with her back to the bedroom door, programming her television, when she heard Keimer coughing from behind where she was sitting. She turned around and saw Keimer standing next to the nightstand with the bottle of Wonder 8 Oil in his hand and oil in and around his mouth. She quickly knocked the bottle out of his hand, gave him some milk,

---

[2] A review of plaintiff's appellate brief reveals that she is no longer pursuing any argument regarding the failure to equip the product with a childproof safety device.

and called 911. Impatient with the 911 operator's questions, plaintiff decided to drive Keimer to Grace Hospital. After he was stabilized later that night, Keimer was transferred to Children's Hospital where he remained for approximately one month.

On admission to Children's Hospital, Keimer was diagnosed with hydrocarbon ingestion with chemical pneumonitis.[3] Initially he improved, but his condition then deteriorated, and he died on July 30, 1999. Keimer's cause of death was identified as "[m]ulti-system organ failure secondary to chemical pneumonitis, secondary to hydrocarbon ingestion."[4]

Plaintiff's niece explained in deposition that she had brought Keimer into plaintiff's bedroom because she was going outside and that she assumed that plaintiff had heard her say this. But plaintiff asserted that she did not notice her niece bring Keimer into the room. Plaintiff could not explain how Keimer gained possession of the product because, as mentioned, she always kept it in the bathroom medicine cabinet and she had returned it there the last time she used it. She assumed that the bottle must have been in her bedroom because

---

[3] In the simplest of terms, "pneumonitis" is defined as an "inflammation of the lung" and a "hydrocarbon" is "any of a class of aliphatic, cyclic, or aromatic compounds containing only hydrogen and carbon, as methane or benzene." *Random House Webster's College Dictionary* (2001). Plaintiff testified that the doctors informed her that "the problem was that the oil got into his lungs."

[4] At summary disposition below and on appeal, defendants did not present arguments relative to medical and scientific matters concerning the cause of death, the toxicity level of the product if ingested, and other issues requiring expertise. On the record before us, we simply have a case involving the ingestion of the Wonder 8 Oil and a death that presumably was caused by the ingestion. For purposes of our opinion, therefore, we proceed on the basis that ingestion of the product can cause a fatality. On remand, however, defendants are free to pursue medical and scientific avenues that may be contrary to our conclusion.

it was not possible for Keimer to get the bottle out of the medicine cabinet. Plaintiff speculated that her niece, who had permission to use plaintiff's beauty products, had used the product and left it in the bedroom. Although the niece stated that she had used the product a couple of days before the incident, she had no idea how Keimer gained possession of the bottle.

In her deposition, plaintiff testified that she always kept her nail care products, e.g., polish and acrylic, in a locked case because she knew that they could be harmful if swallowed. She stated that most of those products displayed a warning to that effect. Plaintiff also testified that when her first son was born, Keimer was plaintiff's second-born child, she "baby-proofed" the house. Specifically, she installed locks on the cabinets and put plastic plugs in the electrical outlets.

In an affidavit, plaintiff confirmed that she kept her nail care products in a locked case because of her knowledge that such products could be toxic. Additionally, she averred that following the birth of her first son, she stored all products that she knew to be toxic, such as bleach and ammonia, in a locked cabinet. Plaintiff asserted that, generally, it was her habit to read product labels because she had two small children. She further maintained that, because the ingredients of the Wonder 8 Oil were described as natural, she had no idea that they could be fatal. With respect to the Wonder 8 Oil, plaintiff avowed that if the bottle had displayed a warning indicating that the product was toxic or fatal if swallowed, she would not have allowed her niece to use the product and she would not have left it in the medicine cabinet where anyone in the house could have access to it. Plaintiff claimed that she would have instead put the Wonder 8 Oil in a locked cabinet or case and told her niece not to use it.

Super 7 Beauty Supply moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff failed to establish that Super 7, as merely a seller of the product, had independently breached an express or implied warranty or was independently negligent. Super 7 further contended that plaintiff failed to show that the product was not fit for the ordinary purposes for which such products are used or that it was not fit for a particular purpose. A.P. and Revlon moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that the lack of a warning was not the proximate cause of the injury and that the product was misused in a manner that was not reasonably foreseeable.

After hearing oral arguments, the trial court granted the summary disposition motions in favor of defendants, adopting the brief and oral argument of A.P. and Revlon as the basis for its decision. Because A.P. and Revlon focused their C(10) arguments on a lack of causation because of alleged knowledge of the danger by plaintiff, misuse, and a lack of a duty to warn, these positions necessarily formed the basis of the trial court's ruling. Plaintiff appeals as of right.

## II. ANALYSIS

### A. APPELLATE STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling to either grant or deny a motion for summary disposition. *Kreiner v Fischer,* 471 Mich 109, 129; 683 NW2d 611 (2004). Questions of statutory interpretation are likewise reviewed de novo. *Id.* Further, questions of law in general are reviewed de novo. See *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 612; 684 NW2d 800 (2004).

### B. MCR 2.116(C)(10)—STANDARD AND TESTS

MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue regarding any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(5). "Where the burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in [the] pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto, supra* at 362. Where the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003)(citations omitted).

### C. OPEN AND OBVIOUS DANGER DOCTRINE, MCL 600.2948, AND PERSONAL KNOWLEDGE

The first issue we address concerns defendants' argument that the danger arising from ingestion of Wonder 8 Oil was open and obvious. Although this particular argument was not directly presented to the trial court, we shall review the issue because consideration is

necessary for a proper determination of the case and the question is chiefly one of law concerning which the necessary facts have been presented. *Steward v Panek,* 251 Mich App 546, 554; 652 NW2d 232 (2002). Defendants did present a brief argument at the hearing on the motion for summary disposition that there was no duty to warn, and the open and obvious danger doctrine relates to duty, as we shall explain below. Further, the issue whether the danger was open and obvious ties so closely with matters regarding knowledge and proximate cause that resolution of the issue is appropriate.

A negligent failure to warn renders a product defective even if the design chosen does not render the product defective. *Gregory v Cincinnati Inc,* 450 Mich 1, 11; 538 NW2d 325 (1995). To establish a prima facie case of negligent failure to warn in a products liability action, the plaintiff must show that "(1) the defendant owed the plaintiff a duty to warn of the danger, (2) the defendant breached that duty, (3) the defendant's breach was the proximate and actual cause of the plaintiff's injury, and (4) the plaintiff suffered damages as a result." *Tasca v GTE Products Corp,* 175 Mich App 617, 622; 438 NW2d 625 (1988).

"Manufacturers have a duty to warn purchasers or users of dangers associated with the intended use or reasonably foreseeable misuse[5] of their products, but the scope of the duty is not unlimited." *Glittenberg v Doughboy Recreational Industries (On Rehearing),* 441 Mich 379, 387-388; 491 NW2d 208 (1992). In the products context, the duty to warn imposes an obligation on manufacturers and sellers to transmit safety-related information when they know or should know that the buyer or user is unaware of that information.

---

[5] We discuss "misuse" later.

*Id.* at 386. The *Glittenberg* Court, which acknowledged the well-established rule that there is no duty to warn of a product's dangerous features or qualities if the danger is open and obvious, stated:

> In the context of warnings of the obvious danger of simple products, the duty inquiry asks whether people must be told what they already know. Warnings protect consumers where the manufacturer or seller has superior knowledge of the products' dangerous characteristics and those to whom the warning would be directed would be ignorant of the facts that a warning would communicate. Thus, it has been observed that no duty exists where "the consumer is in just as good a position as the manufacturer to gauge the dangers associated with the product[.]"
>
> * * *
>
> Determination of the "obvious" character of a product-connected danger is objective. The focus is the typical user's perception and knowledge and whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the ordinary user or consumer. [*Id.* at 391-392 (citations omitted).]

Tort reform legislation that was enacted in 1995 and took effect in 1996 essentially incorporated the elements and principles of *Glittenberg* with respect to the application of the open and obvious danger doctrine in products liability cases. MCL 600.2948, which is contained in chapter 29 of the Revised Judicature Act, and which addresses matters pertaining to product liability actions, provides in relevant part:

> A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar

position as the person upon whose injury or death the claim is based in a product liability action. [MCL 600.2948(2).][6]

Here, the risk of possibly becoming ill from the ingestion of the hair and body care product would probably be obvious to a reasonably prudent product user and would likely be a matter of common knowledge to persons in the same or similar position as plaintiff. We cannot conclude, however, that as a matter of law, the risk of death from the ingestion of Wonder 8 Oil would be obvious to a reasonably prudent product user and be a matter of common knowledge, especially considering the lack of *any* relevant warning. Although in a general sense, a hair and body care product is a "simple" product, it cannot be considered simple when considering the numerous ingredients and compounds that are used to make the product. To a great degree, these ingredients and their benign or dangerous qualities most certainly are not within the realm of knowledge of a layperson. While most individuals understand that ingestion of these ingredients, as contained in a hair and body care product, may make them ill and possibly result in vomiting, diarrhea, and maybe having their stomach pumped, reasonable minds could differ on whether knowledge of the ingredients alone, without any warning whatsoever of harm or danger, would alert one to the fact that death could result from ingesting the product. Indeed, the reference to natural oils, such as coconut and wheat germ oil, as listed on the bottle of Wonder 8 Oil, could lead a reasonable person to conclude that there was very little chance, if any, that ingestion would lead to serious ill effects, let alone

---

[6] While *Glittenberg* provides a sound starting point for a discussion regarding products liability and the open and obvious danger doctrine, it did not, of course, touch on the subsequently enacted language of the statute addressing the topic. The statute, which on our review is consistent with the principles stated in *Glittenberg*, ultimately controls our analysis.

death. Plaintiff averred that, because the product was advertised as containing natural oils, she did not contemplate that it could be toxic and fatal.

Even if a reasonable person would be conscious of possible harm or of a vague danger associated with the product, it does not "preclude a jury from finding that a warning was nonetheless required to give [the purchaser] a full appreciation of the seriousness of the life-threatening risks involved." *Michigan Mut Ins Co v Heatilator Fireplace,* 422 Mich 148, 154; 366 NW2d 202 (1985); see also *Spaulding v Lesco Int'l Corp,* 182 Mich App 285, 293; 451 NW2d 603 (1990), aff'd in *Glittenberg, supra; Pettis v Nalco Chem Co,* 150 Mich App 294, 302-303; 388 NW2d 343 (1986); *Graham v Ryerson,* 96 Mich App 480, 489; 292 NW2d 704 (1980), disagreed with on other grounds in *Bradbury v Ford Motor Co,* 419 Mich 550; 358 NW2d 550 (1984).

In the case at bar, a jury could reasonably find that, although some level of harm might be anticipated as a result of the ingestion of Wonder 8 Oil, a warning was nonetheless required to give plaintiff a full appreciation of the seriousness of the life-threatening risks involved in order to allow her to act accordingly in making sure that her children would not accidentally ingest the product. As stated by our Supreme Court in *Glittenberg*:

> In summary, when a defendant claims that it owes no duty to warn because of the obvious nature of a danger, a court is required, as a threshold matter, to decide that issue. The court must determine whether reasonable minds could differ with respect to whether the danger is open and obvious. If reasonable minds cannot differ on the "obvious" character of the product-connected danger, the court determines the question as a matter of law. If, on the other hand, the court determines that reasonable minds could differ, the obviousness of risk must be determined by the jury. [*Glittenberg, supra* at 398-399 (citations omitted).]

MCL 600.2948(2) does not prohibit a jury from determining the obviousness of a risk. Here, the obviousness of the risk of death must be determined by the jury.

A closely related issue concerns defendants' claim that plaintiff had actual knowledge of the harm that could result from ingesting the product. There is no duty to warn someone of a risk of which that person is already aware. *Groncki v Detroit Edison Co,* 453 Mich 644, 656; 557 NW2d 289 (1996). Where the "specific dangers are fully known" to a plaintiff at the time of injury, the defendant has no duty to warn. *Bullock v Gulf & Western Mfg,* 128 Mich App 316, 323; 340 NW2d 294 (1983).

In plaintiff's deposition, she testified that she would not have let Keimer taste the Wonder 8 Oil because it could be harmful to him. Plaintiff, however, further testified that she "never would have thought that [the] product would be dangerous." She additionally indicated that she did not know that the Wonder 8 Oil was dangerous until *after* Keimer ingested the product and responded horribly. In plaintiff's affidavit, she averred that she "had no knowledge or understanding that the subject product could be toxic or fatal." Parties to a suit may not contrive factual issues by asserting the contrary in an affidavit after having given damaging testimony in a deposition. *Mitan v Neiman Marcus,* 240 Mich App 679, 683; 613 NW2d 415 (2000). We find no inherent conflict between plaintiff's affidavit and her deposition testimony, nor do we find that plaintiff's deposition testimony is necessarily harmful. Rather, the testimony and affidavit, reasonably interpreted, indicate that while plaintiff realized that some level of nonlethal harm could be associated with the ingestion of the Wonder 8 Oil, plaintiff was not aware of the

potential lethal or fatal qualities of the product should one of her children inadvertently ingest the product. Whether plaintiff was aware of the specific danger of serious harm or death, i.e., knowledgeable of the true extent of the risk, remembering the lack of any warning and considering the listed ingredients, is a question for the jury to resolve, not a court as a matter of law, in light of the documentary evidence presented. Comparable to our reasoning declining summary disposition pursuant to the open and obvious danger doctrine, reasonable minds could differ in regard to whether plaintiff had knowledge sufficient to obviate any requirement on defendants' part to warn of the dangers.[7]

### D. CAUSATION

Plaintiff argues that the product at issue failed to display any warnings regarding the product's toxicity and lethal qualities and that she established a factual

---

[7] Defendant Super 7 Beauty Supply argues that, unlike a manufacturer, a seller of a product has no duty to warn purchasers of dangers associated with the use of a product. Super 7 relies on *Glittenberg* for this proposition. Super 7's argument lacks merit. Although at times the *Glittenberg* Court only references the term "manufacturers" as part of a particular discussion, quite often both manufacturers and sellers are referenced as having a duty to warn. *Glittenberg, supra* at 386-390. For example, the Court states in one passage that "[a] duty is imposed on a manufacturer or seller to warn under negligence principles . . . ." *Id.* at 389. Moreover, Super 7's argument is inconsistent with MCL 600.2947(4), which provides that "[e]xcept to the extent a state or federal statute or regulation requires a manufacturer to warn, a manufacturer *or seller* is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." (Emphasis added.) If a seller cannot be liable for a failure to warn, then this language is unnecessary. The language infers and indicates that if an intended user is not a sophisticated user, a failure to warn would provide a basis to sue a seller. We note that there is no evidence that plaintiff is a "sophisticated user," which term is defined as a person who, by virtue of training or experience, "is or is generally expected to be knowledgeable about a product's properties . . . ." MCL 600.2945(j).

issue with respect to whether defendants' breach of the duty to warn was the proximate cause of the injury and death through presentation of her deposition testimony and affidavit, which indicated that she would have altered her conduct if a warning had been given.

To establish that a breach of the duty to warn was a proximate cause of an injury sustained, a plaintiff must present evidence that the product would have been used differently had the warnings been given. *Mascarenas v Union Carbide Corp*, 196 Mich App 240, 251; 492 NW2d 512 (1992). Only if reasonable minds could not differ concerning a proximate cause of the plaintiff's injury should a court rule on the issue as a matter of law. *Id.* "A plaintiff in a products liability action need not offer evidence that positively excludes every other possible cause. It is enough that a plaintiff establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories." *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 401; 571 NW2d 530 (1997), citing *Skinner v Square D Co*, 445 Mich 153, 179; 516 NW2d 475 (1994).

In *Hollister v Dayton Hudson Corp*, 201 F3d 731 (CA 6, 2000), the plaintiff was severely burned when the rayon shirt that she was wearing, which had been purchased by her mother, ignited upon contact with a hot electric burner on her stove. The United States Court of Appeals for the Sixth Circuit first ruled, in discussing and rejecting an open and obvious danger argument, that although a consumer might reasonably be expected to know that a rayon shirt will catch fire more easily than a shirt made of flannel, an ordinary consumer would have no way of knowing that a particular rayon shirt, such as the plaintiff's shirt, was substantially more combustible and flammable than

another rayon shirt as suggested by the evidence presented. *Id.* at 741. This ruling supports our holding regarding the open and obvious danger doctrine. Further, the *Hollister* court stated:

> Once a plaintiff establishes that a product is defective . . . because of a failure to warn[,] she must then demonstrate that this defect was a proximate cause of her injuries . . . . Hollister's mother stated in an affidavit that she would not have bought the shirt for her daughter if she had known that the shirt was extremely flammable, and Hollister herself maintained in an affidavit that she would not have worn the shirt in question if she had possessed such knowledge. A reasonable jury could find, based on this evidence, that the shirt's failure to carry a warning was a proximate cause of Hollister's injuries. [*Id.* at 741-742 (citation omitted).]

We first note that plaintiff is not entitled to an inference of proximate cause, as argued, because the inference has only been applied to establish that a *deceased* would have heeded the warning. See *Bordeaux v Celotex Corp*, 203 Mich App 158, 166; 511 NW2d 899 (1993); *Schutte v Celotex Corp*, 196 Mich App 135, 140-141; 492 NW2d 773 (1992). Proximate cause here relates to plaintiff's action or inaction and not Keimer's; therefore, these cases are not relevant.

As stated in our recitation of the facts, plaintiff averred that if the bottle of Wonder 8 Oil had displayed a warning indicating that the product was toxic or fatal if swallowed, she would not have allowed her niece to use the product and she would not have left it in the medicine cabinet where anyone in the house could have access to it. Plaintiff claimed that she would have, instead, put it in a locked cabinet or case and told her niece not to use it. Plaintiff indicated in her affidavit and in her deposition that she was quite vigilant about childproofing her home for the safety of her two small

children. She averred that she customarily read labels to alert her of dangers because of her children.

Viewing this evidence in a light most favorable to plaintiff as we are required to do when addressing C(10) motions for summary disposition, a reasonable jury could conclude that the product would have been used and treated differently had the warnings been given and that, had the product been locked up more securely, it would not have found its way to Keimer's hands. Plaintiff provided sufficient evidence to create an issue of fact regarding whether she established a logical sequence of cause and effect with respect to the lack of a warning and Keimer's death, or in other words, proximate cause. See *Allen, supra,* and *Hollister, supra.*

Defendants argue that the affidavit is inadmissible to create a question of fact on causation because a party may not contrive a factual issue by asserting in an affidavit facts contrary to those she testified about in a deposition. Defendants assert that plaintiff's affidavit contradicts her deposition because, when she was deposed, she stated that she knew that the product was harmful and should not be ingested.

We disagree that the affidavit contradicts plaintiff's deposition for the reasons stated above in our discussion regarding plaintiff's "knowledge" of the danger. Plaintiff stated that she did not know the product was dangerous beforehand and that its dangers did not become evident until after Keimer ingested the Wonder 8 Oil. Although plaintiff repeatedly testified that she kept the product in the medicine cabinet that was inaccessible to Keimer, she never stated that she did so specifically as a safety precaution. Despite claiming that she never would have let her son taste the Wonder 8 Oil out of fear that it could be harmful on some level, she

clearly indicated that she never would have thought the product to be dangerous. The affidavit does not contradict her deposition testimony, but rather indicates that plaintiff would have taken extra precautions if she had been aware of the danger of possible death associated with the ingestion of the product. The trial court erred in granting summary disposition on the basis that there was a lack of proximate cause. A jury must resolve the issue.

### E. MISUSE AND MCL 600.2947

Plaintiff argues that ingestion of the Wonder 8 Oil by a toddler was a reasonably foreseeable misuse of the product. Defendants maintain that the trial court properly granted summary disposition because ingestion of the Wonder 8 Oil was clearly an unforeseeable misuse of the product. MCL 600.2947(2) provides:

> A manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable. Whether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court.

"Misuse" is defined in MCL 600.2945(e), which provides as follows:

> "Misuse" means use of a product in a materially different manner than the product's intended use. Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances.

Plaintiff maintains that it is reasonably foreseeable that the Wonder 8 Oil, given its purpose, would be left out where a child could have access to it when it provided no warnings regarding its danger and lethal propensities.

The Wonder 8 Oil was misused because obviously it was not intended for ingestion, rather it was intended to be used as a hair and body care product. Whether the misuse is ultimately coined as reasonably foreseeable is dependent on the underlying issue whether a warning label was necessary. An adult ingesting the product is not a reasonably foreseeable misuse, while ingestion by a young child or toddler could be reasonably foreseeable. Keimer's ingestion of the Wonder 8 Oil is a reasonably foreseeable misuse where there was no relevant warning, if it is determined by the jury that plaintiff lacked knowledge of the product's dangerous or lethal qualities, and if the danger is determined not to be open and obvious, considering that, as a standard bathroom item reasonably thought not to be dangerous, young children could gain access to the product because it would not be well guarded. Of course, if the danger of the product were open and obvious, or if plaintiff, as parent purchaser, were to have knowledge of the associated risks, ingestion by Keimer would not be a reasonably foreseeable misuse because a reasonably prudent parent would have taken extra precautions to make the product inaccessible to children. Pursuant to our review de novo of issues of law and the requirement of MCL 600.2947(2) that misuse be resolved by the court, our rulings are conclusive on what would constitute reasonably foreseeable misuse in this case. MCL 600.2947(2) does not preclude us, or any court, from allowing the jury to resolve underlying factual issues that bear on

misuse.[8] Accordingly, if the jury determines that an appropriate warning was required, such as "keep out of the reach of children," "do not ingest," or "ingestion can be fatal," which determination would necessarily mean that the jury found that the danger was not open and obvious and that plaintiff did not have knowledge of the danger, the misuse of the product is deemed reasonably foreseeable. Summary disposition predicated on misuse was improper.

### F. PLAINTIFF'S DUTY AS PARENT

Defendants argue that they are absolved from any duty to warn because the duty to protect Keimer rested with plaintiff. Defendants rely on *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1; 497 NW2d 514 (1993), overruled on other grounds in *Allied Electric Supply Co, Inc v Tenaglia*, 461 Mich 285; 602 NW2d 572 (1999). However, *Adams* does not benefit defendants. The *Adams* panel stated:

> Notwithstanding Bic's acknowledgement that it was foreseeable at the time the lighter was manufactured that lighters could get into and were getting into the hands of children, the typical user of a lighter is an adult. The flame from a lighter creates a risk of harm that is well known and discernible by casual inspection. We find that Bic has no duty to warn children with respect to the obvious danger of its lighters because such danger is no danger to the reasonably careful person. *Bic fulfills its duty to warn by warning the adult purchasers of its products to keep the lighters out of the reach of children.* Because reasonable minds cannot differ with regard to the obvious character of

---

[8] This is analogous to the element of duty in a negligence action, which is a question of law for the court. But where there are factual circumstances that give rise to a duty, the existence or nonexistence of those facts are decided by a jury. See *Aisner v Lafayette Towers*, 129 Mich App 642, 645; 341 NW2d 852 (1983).

the lighter's danger, Bic as a matter of law owes no duty to warn. [*Adams, supra* at 13 (citation omitted; emphasis added).]

Here, we have determined that the question whether the product's danger was open and obvious rests with the jury. If a warning were required on the Wonder 8 Oil, such as "keep out of the reach of children," plaintiff, the typical user, was not in a position to carry out her parental obligation to take prudent steps in protecting her children from injury where no warning was given. In such a situation, defendants remain responsible for harm to the child.

### G. BREACH OF IMPLIED WARRANTIES

Plaintiff argues that she presented sufficient evidence to establish a claim of breach of implied warranties. We first note that only Super 7 raised a defense that directly focuses on principles concerning implied warranties. The trial court, adopting the arguments of A.P. and Revlon as the basis for its ruling, in effect did not render a ruling on the cause of action alleging breach of implied warranties by any defendant. Nonetheless, the result of the trial court's order was a dismissal of all of plaintiff's claims.

MCL 600.2947(6) provides in pertinent part:

In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:

(a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.

"Against a seller who is not also the manufacturer, the claim is usually premised on an implied warranty theory." *Gregory, supra* at 34. MCL 440.2314 of the

Uniform Commercial Code as adopted in Michigan, MCL 440.1101 *et seq.,* addresses the implied warranty of merchantability, and subsection 2(e) of the statute provides, in part, that for goods to be merchantable, they must be "adequately contained, packaged, and labeled."

In certain factual contexts, negligence and breach of implied warranty may involve the same elements and proofs, yet the theories remain separate causes of action. *Bouverette v Westinghouse Electric Corp,* 245 Mich App 391, 395; 628 NW2d 86 (2001). In *Bouverette,* this Court found ample evidence to establish a prima facie case of breach of implied warranty predicated on a failure to warn, where the deceased was electrocuted while working on a control panel for an industrial welding machine and where there was evidence that the instruction and installation manual did not provide a needed warning in regard to the mechanism that caused the electrocution. *Id.* at 396.

We have already determined here that the issues whether the Wonder 8 Oil required a warning, or in other words whether the product was adequately labeled, and whether proximate cause was established are questions for the jury. Accordingly, dismissal of plaintiff's claims premised on breach of implied warranties was in error.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.