**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 19, 2006

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

Plaintiff-Appellee,

v                                                    No. 127718

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

Defendants-Appellants,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC, f/k/a PRO CARE BEAUTY
SUPPLY,

Defendants-Appellees,

and

RAANI CORPORATION,

Defendant.
_____

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

Plaintiff-Appellee,

v                                                    No. 127734

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellees,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC., f/k/a PRO CARE BEAUTY
SUPPLY,

       Defendants-Appellants,

and

RAANI CORPORATION,

       Defendant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In this case we consider the scope of a manufacturer's or seller's duty to warn of product risks under MCL 600.2948(2). We conclude that the statute imposes a duty to warn that extends only to material risks not obvious to a reasonably prudent product user, and to material risks that are not, or should not be, a matter of common knowledge to persons in the same or a similar position as the person who suffered the injury in question. Because the material risk associated with ingesting and inhaling Wonder 8 Hair Oil, as occurred here, would have been obvious to a reasonably prudent product user, the failure to warn against the risk is not actionable. The Court of Appeals misunderstood this duty and held that a duty also existed to warn of the kind of injuries that were suffered. The Court of Appeals also incorrectly allowed various warranty claims to proceed on

2

the basis that the warning was inadequate. Because no warning was required, these holdings were in error. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court's order granting summary disposition to all defendants.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

In April 1999, plaintiff purchased a spray bottle of African Pride Ginseng Miracle Wonder 8 Oil, Hair and Body Mist-Captivate (Wonder 8 Hair Oil) from defendant Pro Care Beauty Supply, which is currently known as Super 7 Beauty Supply, Inc. Defendant A.P. Products, which was subsequently acquired by Revlon Consumer Products Corporation, packaged and labeled Wonder 8 Hair Oil. Wonder 8 Hair Oil was marketed principally to African-Americans as a new type of spray-on body and hair moisturizer containing eight natural oils. Plaintiff decided to try the oil after reading the ingredients on the label,[1] some of which were familiar to her and some of which were not. Although the bottle's label cautioned the user never to spray the oil near sparks or an open flame, it did not warn that the hair oil should be kept out of reach of children or that it was

---

[1] The ingredients listed on the label are Gin Gro Oil Complex (paraffin oil, tea tree oil, kuki nut oil, evening primrose oil, avocado oil, coconut oil, wheat germ oil), isopropryl myristate, fragrance, Gin Gro herbal complex (rosemary, sage, angelica root, licorice root, Job's tears, cedar, hyacinth, clove, lemon balm, chamomile), carrot oleo resin, azulene, tocopherol acetate (Vitamin E), retinyl palmitate (Vitamin A), and cholecalciferol (Vitamin D).

potentially harmful or fatal if swallowed.[2]  Plaintiff's 11-month-old son, Keimer

Easley, had been left unattended.  Somehow he obtained the bottle of hair oil,

which had been left within his reach.  He ingested and inhaled the hair oil.[3]  The

child died about one month later from multisystem organ failure secondary to

chemical pneumonitis, secondary to hydrocarbon ingestion.  In other words, the

mineral oil clogged the child's lungs, causing inflammatory respiratory failure.

Plaintiff filed this product-liability action, alleging that defendants breached

their duty to warn that the product could be harmful if ingested and that it should

be kept out of reach of small children.  Plaintiff further claimed that defendants

breached an implied warranty by failing adequately to label the product as toxic.

Defendants moved for summary disposition.  AP Products and Revlon

argued that they had no duty to warn because the material risks associated with

ingesting Wonder 8 Hair Oil were obvious to a reasonably prudent product user.

---

[2] The hair oil was packaged in a clear plastic 7.5 ounce bottle with a nonaerosol pump actuator.

[3]  When plaintiff first observed that her son had possession of the hair oil, he was standing with the bottle of Wonder 8 Oil in his hand and oil in and around his mouth.  Evidently, the child put an unknown amount of hair oil into his mouth, some of which eventually wound up in his lungs.  When he was admitted to the hospital, he was diagnosed with hydrocarbon ingestion and chemical pneumonitis. It is not clear how Keimer managed to put the oil into his mouth.  Plaintiff testified that when she last used the product earlier that day, the cap had been intact.  When she later saw the child with the bottle of oil, the plastic top covering the pump actuator and the actuator were missing.  The plastic base of the pump actuator had been cracked vertically so that the pump could be peeled off and the oil could be poured out.

They further argued that the lack of warning was not the proximate cause of the injury and that the product had been misused in a way that was not reasonably foreseeable. Super 7 Beauty Supply argued that plaintiff failed to establish that it, as a nonmanufacturing seller, had independently breached an express or implied warranty or was independently negligent. It further argued that plaintiff failed to show that the product was not fit for its ordinary uses or for a particular purpose.

The trial court granted defendants' motions for summary disposition. The Court of Appeals reversed and remanded, concluding that the questions whether the Wonder 8 Hair Oil required a warning label, whether defendants breached an implied warranty, and whether plaintiff established proximate cause should have been submitted to a jury.[4]

Defendants sought leave to appeal in this Court. We granted defendants' applications for leave to appeal.[5]

## II. STANDARD OF REVIEW

This case requires us to determine whether the Court of Appeals erred in reversing the trial court's grant of summary disposition in favor of defendants under MCR 2.116(C)(10). We review this issue de novo. *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002), citing *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In reviewing such a decision, we consider

---

[4] 264 Mich App 391; 691 NW2d 38 (2004).

[5] 474 Mich 886 (2005).

the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Rose, supra* at 461, citing *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Summary disposition under MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Rose, supra* at 461, citing MCR 2.116(C)(10).

## III. ANALYSIS

Before 1995, a manufacturer's or seller's duty to warn of material risks in a product-liability action was governed by common-law principles. Tort reform legislation enacted in 1995,[6] however, displaced the common law. MCL 600.2948, in chapter 29 of the Revised Judicature Act, now governs a defendant's duty to warn of an obvious danger in a product-liability action. It states, in relevant part:

> A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action. [MCL 600.2948(2).][7]

---

[6] 1995 PA 249, effective March 28, 1996.

[7] At common law, a duty to warn of dangers involving the use of a product was imposed on a manufacturer or seller under negligence principles summarized in 2 Restatement Torts, 2d, § 388. *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 389-390; 491 NW2d 208 (1992). A manufacturer or seller could be held liable for failure to warn if it (a) had actual or

(continued…)

6

Under the plain language of MCL 600.2948(2), a manufacturer has no duty to warn of a material risk associated with the use of a product if the risk: (1) is obvious, or should be obvious, to a reasonably prudent product user, or (2) is or should be a matter of common knowledge to a person in the same or a similar position as the person upon whose injury or death the claim is based.[8]

_____

(…continued)
constructive knowledge of the claimed danger, (b) had no reason to believe that those for whose use the product is supplied would realize its dangerous condition, and (c) failed to exercise reasonable care to inform users of the product's dangerous condition or of the facts that make it likely to be dangerous. *Id.*, citing 2 Restatement Torts, 2d, § 388, p 301.

Michigan also recognized the common-law "obvious danger" rule. *Glittenberg, supra* at 393. A manufacturer had no duty to warn if it reasonably perceived that the product's potentially dangerous condition was readily apparent or could have been disclosed by a mere casual inspection. *Id.* at 390. Michigan, however, narrowed application of the "obvious danger" rule to cases involving "simple tools or products." *Id.* at 393, citing *Owens v Allis-Chalmers Corp*, 414 Mich 413, 425; 326 NW2d 372 (1982). No duty existed to warn of the obvious danger of a simple product because an obvious danger was no danger to a "reasonably" careful person. *Glittenberg, supra* at 395-396. In other words, as stated by this Court in *Glittenberg*, "where the very condition that is alleged to cause the injury is wholly revealed by casual observation of a simple product in normal use, a duty to warn serves no fault-based purpose." *Id.* at 396, citing *Prentis v Yale Mfg Co*, 421 Mich 670; 365 NW2d 176 (1984). A product was considered simple if it was a "'thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user . . . .'" *Glittenberg, supra* at 391, quoting *Jamieson v Woodward & Lothrup*, 101 US App DC 32, 37; 247 F2d 23 (1957).

[8] The principles set forth in MCL 600.2948(2) incorporate most of the common-law principles regarding the "obvious danger" doctrine. The statute, however, does not incorporate principles regarding "simple tools and products." Under the statute, a defendant need not show that the product in question was a "simple" product in order for the "obvious danger" doctrine to apply.

Accordingly, this statute, by looking to the reasonably prudent product user, or persons in the same or a similar position as the injured person,[9] establishes an objective standard.[10]

In determining what constitutes a material risk, we are mindful that the statutes governing statutory construction direct us to construe "all words and phrases . . . according to the common and approved usage of the language," but construe "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law" according to such peculiar and appropriate meaning. MCL 8.3a; *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). Our research reveals that the term "material risk" has no prior "peculiar and appropriate meaning in the law." It is thus not a term of art. When considering a word or phrase that has not been given prior legal meaning, resort to a lay dictionary such as Webster's is appropriate. *Id.* at 756. *Random House Webster's College Dictionary* (1997) defines "material," in relevant part, as "important: to make a material difference; pertinent: a material question." *Random House Webster's College Dictionary* (1997) defines "risk" as "exposure

---

[9] Because it would not be a matter of common knowledge to a person in the same or a similar position as plaintiff's son, an 11-month-old, that a material risk is involved with ingesting Wonder 8 Hair Oil, the only issue in this case is whether it would be obvious to a reasonably prudent product user that a material risk is involved with ingesting Wonder 8 Hair Oil.

[10] Interestingly, the Legislature's use of an objective standard is consistent with this Court's case law predating the statute. See *Glittenberg, supra* at 391-392.

to the chance of injury or loss." We thus conclude that a "material risk" is an important or significant exposure to the chance of injury or loss.

Finally, regarding the meaning of the statute, we conclude that the Legislature has imposed no duty to warn beyond obvious material risks. The statute does not impose a duty to warn of a specific type of injury that could result from a risk. The Court of Appeals, however, mistakenly held that warnings must cover not only material risks, as described, but must also cover potential injuries that could result.

While the Court of Appeals properly applied an objective standard in determining the suitability of the warning, it stated that it could not conclude that "as a matter of law, *the risk of death* from the ingestion of Wonder 8 Hair Oil would be obvious to a reasonably prudent product user and be a matter of common knowledge, especially considering the lack of *any* relevant warning." 264 Mich App at 401 (first emphasis added). The Court of Appeals thus required that the warning indicate specific injuries a product user could incur. Yet, as we have stated, the statute does not require that a warning address possible injuries that might occur.[11]

---

[11] In *Glittenberg, supra* at 400, this Court addressed whether a defendant must warn of specific harms. The plaintiff in *Glittenberg* argued that the danger of diving in a shallow pool was not open and obvious because the specific harm of paralysis or death is not generally recognized. *Id.* This Court noted, however, that the "threshold issue is not whether a shallow dive can be successfully executed

(continued…)

9

Here, tragically, plaintiff's 11-month-old son died after ingesting and inhaling Wonder 8 Hair Oil.[12] Under the law, however, defendants owed no duty to warn of specific injuries or losses, no matter how severe, if it is or should have been obvious to a reasonably prudent product user that ingesting or inhaling Wonder 8 Hair Oil involved a material risk. We conclude that it is obvious to a

_____

(…continued)
but, rather, whether people in general are unaware of the fact that there is a risk of serious harm when diving in shallow water." *Id*. at 401. This Court concluded:

> [W]here the facts of record require the conclusion that the risk of serious harm from the asserted condition is open and obvious, and no disputed question exists regarding the danger of the product, the law does not impose a duty upon a manufacturer to warn of conceivable ramifications of injuries that might occur from the use or foreseeable misuse of the product. [*Id.* at 402.]

If the Legislature had intended to require a defendant to warn of specific dangers, it would have explicitly mandated that alteration in MCL 600.2948(2).

Justice Cavanagh mistakenly asserts that we rely on common-law principles set forth in *Glittenberg, supra*, in reaching our conclusion. We, however, rely solely on the plain language of MCL 600.2948(2) in reaching our conclusion. As stated above, MCL 600.2948(2) does not require that a defendant warn of specific dangers, and it is not within this Court's authority to read such language into the statute.

[12] Justice Kelly contends that the vast majority of the ingredients listed on the label are seemingly food products. She further contends that none of the ingredients alerts a reasonably prudent product user to the fatal result of ingestion. We reiterate, however, that plaintiff's 11-month-old son died from complications stemming from *inhaling* Wonder 8 Hair Oil into his lungs. That the child swallowed some of the hair oil was incidental to his death. But because it would be obvious to a reasonably prudent product user that harm could result from allowing a young child to possess a bottle of oil, whether the harm occurs through ingestion or inhalation or some other action, we hold that no duty exists to warn of the injuries that actually result from allowing the child to possess the oil.

10

reasonably prudent product user that a material risk is involved with ingesting and inhaling Wonder 8 Hair Oil.

The product, as plaintiff concedes, was not marketed as safe for human consumption or ingestion. Rather, the label clearly states that the product is intended for use as a hair and body oil. Although subjective awareness is not the standard, we find it noteworthy that plaintiff herself demonstrated an understanding that Wonder 8 Hair Oil posed a material risk if ingested. We believe it would also be obvious to a reasonably prudent user that ingestion and inhalation of the product poses a material risk. The ingredient label's inclusion of eight natural oils has no bearing on our conclusion. Many, if not all, oils are natural. It should be obvious to a reasonably prudent product user that many oils, although natural, pose a material risk if ingested or inhaled. For instance, the reasonably prudent product user would know that breathing oil would be harmful. A reasonably prudent product user would also know that ingesting such things as crude oil or linseed oil poses a material risk although such oils are natural and pose no immediate danger from contact with hair or skin. In fact, paraffin oil is listed as one of the ingredients in Wonder 8 Hair Oil. It should be obvious to a reasonably prudent product user that ingesting paraffin oil poses a material risk since paraffin is commonly associated with such things as wax.

Additionally, the product label on Wonder 8 Hair Oil does not state that it contains *only* natural oils. Indeed, it lists numerous other ingredients, many of which would be unfamiliar to the average product user, such as isopropryl

11

myristate, fragrance, and azulene.  Given such unfamiliar ingredients, a reasonably prudent product user would be, or should be, loath to ingest it.

Accordingly, we hold that defendants owed no duty to warn plaintiff that her son's ingestion and inhalation of the Wonder 8 Hair Oil posed a material risk. Moreover, defendants owed no duty to warn of the potential injuries that could arise from ingesting and inhaling the product.

The plaintiff also pleaded breach of implied warranty under MCL 600.4947(6)(a) and breach of implied warranty of merchantability under MCL 440.2314(2)(e) with respect to the nonmanufacturing seller, Super 7 Beauty Supply.  Plaintiff claimed that, in the absence of a warning, the oil was not properly labeled.  Because no warning was required, however, these claims are without merit.  Defendants are therefore entitled to judgment as a matter of law.

## IV. RESPONSE TO JUSTICE CAVANAGH'S DISSENT

The crux of Justice Cavanagh's dissent is that we erroneously conclude that the obviousness of *one* risk means the obviousness of *all* risks.  This contention, however, is a gross mischaracterization of our holding and can be found nowhere in our opinion.  Rather, we hold that a defendant has no duty to warn of a material risk that is or should be obvious to a reasonably prudent product user.  We further hold that the material risk associated with the ingestion and inhalation of hair oil is or should be obvious to a reasonably prudent product user.  This conclusion is entirely consistent with the plain language of the statute and focuses on the obviousness of the material risk in question.  It does not charge Michigan

12

consumers with "knowledge of hidden dangers" as suggested by Justice Cavanagh. *Post* at 12.

Justice Cavanagh also contends that we fail to identify the material risk in question and mislabel the risk as "ingesting or inhaling" the hair oil. Contrary to his contention, we have clearly identified the material risk in this case. To the contrary, Justice Cavanagh has mislabeled the risk as the "consequence" that results from the misuse of the product.

The material risk in this case is neither the misuse of the product (the inhalation or ingestion) nor the consequence of the misuse (injury or death). Rather the material risk is the important or significant exposure to the chance of loss or injury stemming from certain behavior, in this case, the ingestion and inhalation of hair oil. In simple terms, the material risk is the chance that injury could result from drinking or inhaling hair oil. Because a reasonable person knows or should know that ingesting or inhaling hair oil would expose that person to the chance of injury or loss, a defendant has no duty to warn that ingesting or inhaling hair oil could result in exposure to injury or loss. Furthermore, the statute does not require that a person be aware of the worst injury or loss (death) that could possibly result from the misuse of the product. Rather, under the plain language of the statute, it need only be obvious to a reasonably prudent product user that a chance exists that he or she might suffer an injury or loss if they drink or inhale hair oil.

We respectfully remind our dissenting colleague that the Legislature, not this Court, refused to impose a duty to warn of obvious material risks. Justice Cavanagh does not deny this, but evidently chooses to ignore it. By what authority can a court under our Constitution do that? Justice Cavanagh gives none. The Legislature also refused to require that a defendant list every possible injury that could result from the misuse of a product. Again, Justice Cavanagh does not deny this, but chooses to ignore it. How does a court obtain such authority? Justice Cavanagh fails to provide an answer, probably because no such authority exists. The rule must and should be that a court applies the statute as written. Applying the plain language of the statute to the facts of this case, we conclude that the material risk associated with ingesting and inhaling hair oil is or should be obvious to a reasonably prudent product user. Thus, defendant had no duty to warn of that material risk.

## V. CONCLUSION

We conclude that the Court of Appeals erroneously reversed the trial court's grant of summary disposition to defendants A.P. Products and Revlon. The material risk of harm associated with ingesting and inhaling Wonder 8 Hair Oil is obvious to a reasonably prudent product user. Defendants thus owed no duty to warn plaintiff of that harm.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                No. 127718

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellants,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC, f/k/a PRO CARE BEAUTY
SUPPLY,

       Defendants-Appellees,

and

RAANI CORPORATION,

       Defendant.
_____

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                No. 127734

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellees,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC., f/k/a PRO CARE BEAUTY
SUPPLY,

        Defendants-Appellants,

and

RAANI CORPORATION,

        Defendant.

_____

WEAVER, J. (*concurring*).

I concur in the majority's result and analysis, except for part IV, the majority's response to Justice CAVANAGH's dissent.

        Elizabeth A. Weaver

S T A T E   O F   M I C H I G A N

SUPREME COURT

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                                                          No. 127718

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellants,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC, f/k/a PRO CARE BEAUTY
SUPPLY,

       Defendants-Appellees,

and

RAANI CORPORATION,

       Defendant.
_____

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                                                          No. 127734

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellees,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC., f/k/a PRO CARE BEAUTY
SUPPLY,

        Defendants-Appellants,

and

RAANI CORPORATION,

        Defendant.

_____

CAVANAGH, J. (*dissenting*).

Michigan consumers beware: If you know or should know that there is *any* material risk from using or accidentally misusing the product you buy, then the manufacturer of that product now has no duty to warn you of any risk at all, even when the potential harm you knew of is not the harm you ultimately suffer. Stated differently, if you know or should know that if, for example, you accidentally drink or inhale a product, you may become ill, then you are charged with knowing that if you accidentally drink or inhale that product, you could die. And the manufacturer need not warn you of *either* of those risks—illness or death. According to the majority, the obviousness of any material risk, such as that of illness, is identical to and has the same effect on your behavior as the obviousness of all risks, including death.

To cut right to the core of the majority's faulty reasoning, the majority completely misreads MCL 600.2948(2), and, in doing so, reaches the erroneous conclusion that obviousness of *one* risk means obviousness of *all* risks. The governing statute states:

A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action. [*Id.*]

The majority ignores key words and basic grammatical structure. Specifically, the Legislature used the word "a" in the phrase "*a* material risk," thus directing its mandate toward *that* particular risk. "A" is an "[i]ndefinite article functioning as an adjective" and is "[u]sed before nouns and noun phrases that denote a single, but unspecified, person or thing[.]" *The American Heritage Dictionary, New College Edition* (1981). Notably, then, the word that "a" precedes is limited to "a single" noun. Thus, in this case, "a material risk" refers to "a single," or one, material risk. As a result, the otherwise unspecified single material risk to which the statute refers must be identified before it can be determined whether that risk was common knowledge or obvious to a reasonably prudent product user.

But the majority ignores the word "a," fails to correctly identify the material risk at issue, and writes the word "obvious" completely out of the statute. In doing so, the majority erroneously concludes that all risks are obvious as long as some risk is obvious. Accordingly, the majority holds that the alleged obviousness of "any" material risk absolves a manufacturer from warning about "all" material risks, even if other material risks are not obvious. The effect on this case is the result that because a reasonably prudent product user would have purportedly known that there was a risk of illness from misusing the Wonder 8

3

Hair Oil, plaintiff should have known there was a risk of death. Therefore, defendants had no duty to warn their consumers about any risk at all.

By concluding this way, the majority rewrites the statute and, consequently, fails to effectuate the protections the Legislature intended. Had the Legislature intended what the majority holds, it would have written the statute as follows: "A defendant is not liable for failure to warn of *any* material risk when *a* material risk should be obvious to a reasonably prudent product user . . . ." Or it would have stated, "A defendant need not warn about *all* material risks if *one* material risk should be obvious to a reasonably prudent product user . . . ." Plainly, it did not write the statute that way, and the majority errs by ignoring the unambiguous language.[1]

To determine in what instances a manufacturer will have no duty to place a warning on its product and what exactly it must warn about, it must first be

---

[1] This is interesting in light of the majority's self-described inexorable adhesion to the categorical interpretation of words such as "a" and "the." See e.g., *Robinson v Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000); *Massey v Mandell*, 462 Mich 375, 382 n 5; 614 NW2d 70 (2000). I have consistently maintained that the words "a" and "the" must be read in context and not in rigid isolation. For example, in *Robinson*, I joined Justice Kelly's dissent, which recognized the dictionary meanings of the words but would have also recognized that in that particular instance, "the proximate cause" had several possible meanings when considered in light of governing causation principles.

The majority's unbending faithfulness to reading the word "a" flounders in this case. Interestingly, under either an isolationist view or a contextual one, the result is the same: "a" material risk can mean nothing other than the material risk of which a plaintiff claims she had no warning.

determined what the "material risk" is alleged to be.[2]  By the majority's own proffered definition, "material" means "'important: to make a material difference; pertinent: a material question.'"  *Ante* at 8, quoting *Random House Webster's College Dictionary* (1997).  The first question, then, is "In what must the material difference be made?"  According the word its common meaning in the context in which it is used, for the risk to be "material," it must make an important or pertinent difference in the consumer's actions with respect to the product.  For instance, the risk would be material if it would bear on whether the consumer purchases the product or how the user deals with the product after purchasing it.  Thus, if, to require a warning, the risk must be an important one that makes a material difference in the user's actions, and it must be obvious as well, then the risk involved must be identified.  Otherwise, there is no way to determine whether the risk is obvious and no way to determine whether it would make some "material difference."

So it is clear from the statutory language that all risks are not equal, for one is likely to act differently depending on the risk involved.  Simply stated,

---

[2] In most, if not all, instances, a plaintiff will be the first to identify the material risk when the plaintiff sues, complaining that he or she was not warned of that particular material risk.  The defendant will then affirmatively defend by asserting that the material risk the plaintiff claims was not warned of was obvious or common knowledge.  In this instance, plaintiff alleges that she was not warned that ingesting or inhaling the product could be fatal.  It makes no sense to say that defendant can defend that it warned of some other material risk or that some other material risk was obvious.

even assuming that a reasonably prudent product user would know that there was a risk of becoming ill from a product, this same consumer does not necessarily know that there is a risk of death. It is not enough to equate two different risks and charge the consumer with knowledge of the more serious one if he has knowledge of the one less serious because it is unreasonable to assume that a reasonably prudent product user would act the same in both circumstances. Thus, the risk of illness, if found to be "a" material risk, must be considered separately from other material risks, such as death. In other words, because the statute states that a manufacturer has no duty "to warn of *a* material risk that is or should be obvious to a reasonably prudent product user or *a* material risk that is or should be a matter of common knowledge to persons in the same or similar position," MCL 600.2948(2), the question becomes whether knowledge of the risk of death would have caused the person to act differently, making it a "material" risk, and, if so, whether that risk was or should have been "obvious." We can determine neither whether a risk was "material" nor whether it was obvious unless we know what the risk is alleged to be.[3]

---

[3] Although this is not a subjective inquiry, it is worth noting plaintiff's testimony that she assumed this product could cause illness if misused but that she would not have bought the product if she had known or been warned that the product would cause death. In other words, the risk of death was a material risk because it would have caused plaintiff to act differently with respect to this product.

By alternatively failing to identify the material risk at issue in this case and mislabeling the risk as "ingesting or inhaling" the oil, the majority prevents the statute from operating as the Legislature intended and deprives Michigan consumers of their right to assess levels of risk when making purchasing decisions. The majority seems to try to hide its incomplete analysis by repeatedly asserting that the product posed "a material risk," because, though that refrain recurs numerous times, the majority either does not name the "material risk" that was supposed to have been obvious or it misidentifies it. Consider the following: "Because the material risk associated with ingesting and inhaling Wonder 8 Hair Oil, as occurred here, would have been obvious to a reasonably prudent product user, the failure to warn against the risk is not actionable." *Ante* at 2. "We conclude that it is obvious to a reasonably prudent product user that a material risk is involved with ingesting and inhaling Wonder 8 Hair Oil." *Id.* at 10-11. "[W]e find it noteworthy that plaintiff herself demonstrated an understanding that Wonder 8 Hair Oil posed a material risk if ingested. We believe it would also be obvious to a reasonably prudent [product] user that ingestion and inhalation of the product poses a material risk." *Id.* at 11. "It should be obvious to a reasonably prudent product user that many oils, although natural, pose a material risk if ingested or inhaled." *Id.* "A reasonably prudent product user would also know that ingesting such things as crude oil or linseed oil poses a material risk . . . ." *Id.* "It should be obvious to a reasonably prudent product user that ingesting paraffin oil poses a material risk since paraffin is commonly associated with such

7

things as wax." *Id*. "Given such unfamiliar ingredients, a reasonably prudent product user would be, or should be, loath to ingest it."[4] *Id.* at 12. "[W]e hold that defendants owed no duty to warn plaintiff that her son's ingestion and inhalation of the Wonder 8 Hair Oil posed a material risk." *Id.* "The material risk of harm associated with ingesting and inhaling Wonder 8 Hair Oil is obvious to a reasonably prudent product user." *Id.* at 14.

The inconsistencies are self-evident. On one hand, the majority claims that the material risk is "ingesting or inhaling" the product. On the other, the majority asserts that ingesting or inhaling this product poses a material risk, which risk is unidentified. Neither conclusion squares with a plain reading of the statute.

Ingesting or inhaling a product is not the material risk in question. That would make no sense at all because a warning that the product could be accidentally ingested or inhaled does not reveal the specific risk involved with ingesting or inhaling and, thus, does not allow a person to assess the risk and act

---

[4] Of course, whether one is "loath to ingest" a product is not the test. Many people would be "loath to ingest" castor oil or Play-Doh, but that says nothing about whether those products pose a material risk if ingested.

8

accordingly. So the risk that must be warned about is not ingestion or inhalation itself.[5]

Rather, ingesting or inhaling is a *misuse* of the product, and the risk posed by that misuse—the one that must be warned of if not obvious—is the consequence of that misuse, i.e., the consequence of ingestion or inhalation. As such, each risk must be identified, assessed for materiality (whether that risk would affect a reasonably prudent product user's actions), and assessed for obviousness. The majority fails at each of these tasks.

This leads to another of the majority opinion's shortcomings: its assumption that knowledge of one risk is knowledge of all. The majority's erroneous conclusion is inconsistent with the plain language of the statute, which speaks of "a" material risk. As two of the defendants aptly explained in their brief, "No one needs to be told what is already known," citing *Dist of Columbia v Moulton*, 182 US 576, 581; 21 S Ct 840; 45 L Ed 1237 (1901).[6] See also *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 391; 491 NW2d 208 (1992). Thus, if a risk, such as illness, is "material," and if someone knows or should know that risk, then that person need not be warned of

_____

[5] Notably, though, under the majority's apparent conclusion that inhalation or ingestion is the risk, that risk is obvious, so no warning is needed at all—not even, "Do not ingest or inhale."

[6] The *Moulton* Court examined whether, when a steamroller was left on the street in plain view, the plaintiff needed to be warned of its presence so that his horses would not be frightened by it.

9

it.  But that says nothing regarding whether that person knows of a different risk, here, the risk of death.  Defendants did not need to warn of the risk of death only if a reasonably prudent product user would have already known of it because a person need not be told what he or she already knows.

In this case, then, to absolve defendants from liability, it must be shown that a reasonably prudent product user would or should have known of the specific material risk the product posed or that that material risk was common knowledge.  Even assuming that a reasonably prudent product user would or should have known that inhaling or ingesting Wonder 8 Hair Oil posed a risk of illness, plaintiff raised a genuine issue of material fact regarding whether the user would have known that inhaling or ingesting Wonder 8 Hair Oil posed the risk of death and whether the same was common knowledge.  Thus, it  cannot be concluded as a matter of law that the manufacturer had no need to attach any warnings to this product merely because a reasonable person might know that the product could make one *sick*.  The risks of illness and death simply do not have the same level of materiality because reasonably prudent product users will most likely act differently in each instance.

In affirming the grant of summary disposition for defendants, the majority allows manufacturers to keep consumers ignorant of hidden dangers, i.e., material risks, posed by their products.  Consider other common household or health and beauty products.  For example, a hair spray bottle may warn that spraying the product in the user's eyes could cause irritation and instruct the user to rinse the

10

eyes thoroughly for 15 minutes should that misuse occur. This information would likely cause the consumer to employ a specifically tailored level of care based on the potential risk of eye irritation. But if that product could also cause blindness, a very different material risk is at play. Knowledge of the material risk of irritation, be it from a warning or from common knowledge, is not knowledge of the risk of blindness. The two risks do not have the same level of materiality because the two risks would likely cause a consumer to make drastically different decisions with regard to the product. In other words, while the risk of eye irritation is a material one because it would cause a user to employ one specific level of care, the risk of blindness is quite another material risk indeed, and one that would likely significantly alter the user's decision-making process. Thus, each is "a material risk" that must be assessed independently. If the material risk of blindness cannot be said to be obvious, even if the material risk of irritation can, then hairspray that could cause blindness would require a warning to that effect.[7]

The same can be said for a tube of toothpaste, to use an example provided by plaintiff. If reasonably prudent product users could be said to assume that eating the contents of a tube of toothpaste would cause an upset stomach, for

---

[7] It should again be noted that if the risk of eye irritation could be said to be obvious to the reasonably prudent product user, the majority would require no warning on the label, even if spraying it in the eyes might cause blindness, because knowledge of the material risk of eye irritation is knowledge of the material risk of blindness.

11

instance, then becoming sick from ingesting the toothpaste would be an obvious risk requiring no warning. Toothpaste is routinely left on countertops, despite that consumers presumably understand that there may be a slight risk if a child ingests it. That risk is known and assessed, and the consumer acts accordingly. But assume that the toothpaste could actually kill a child if ingested. Presumably, the toothpaste would be treated quite differently. If that consequence were widely known or if toothpaste tubes carried a warning that swallowing the contents could be fatal, then consumers would most probably act differently by either seeking a different product or by keeping the toothpaste under lock and key. Yet under the majority's reasoning, as long as the user knows of some material risk, all material risks are deemed known.

In charging consumers with knowledge of hidden dangers, the majority completely writes the word "obvious" out of the statute. As such, warnings that spraying hairspray into one's eyes may cause blindness, that swallowing toothpaste may cause death, or that inhaling hair oil could prove fatal are not required. Under today's opinion, manufacturers need not alert consumers of hidden risks or allow consumers to assess those risks and make informed choices. Rather, knowledge of one material risk is knowledge of all.

An opposite conclusion does not necessarily mean that a manufacturer must warn of the specific medical consequences of misusing the product.[8] For instance, in this case, the label did not need to state that the product, if inhaled, could cause "multisystem organ failure secondary to chemical pneumonitis," which is the medical consequence the product caused the child in this case. Rather, it is enough that a warning speak in general terms, as long as the particular material risk that is not obvious to the reasonably prudent product user is revealed. So in this case, the manufacturer could have simply warned, as

[8] The majority's reliance on *Glittenberg* is misplaced. There, this Court's analysis was governed by the common law. In contrast, this case is governed by MCL 600.2948, which, as the majority itself notes, "displaced the common law." *Ante* at 6. A number of the majority's statements in *Glittenberg* did not survive the enactment of MCL 600.2948. Particularly, its analysis was largely, if not entirely, informed by the principles surrounding simple tools and products, which principles were not incorporated into the statutory enactments. The majority ignores these facts and continues to attempt to graft common-law principles onto the statutory provision at issue. For instance, the majority asserts that had the Legislature "intended to require a defendant to warn of specific dangers, it would have explicitly mandated that alteration in MCL 600.2948(2)." *Ante* at 10 n 11. But the Legislature did explicitly mandate that. After *Glittenberg*, the Legislature explicitly mandated that a manufacturer warn of any "material" risk that is not obvious to the reasonably prudent product user. When the term "material" is given meaning, it is clear that the Legislature intended that a manufacturer warn of any danger that would cause a consumer to behave differently with respect to the product. The majority tries desperately to find a way around this simple truth, but it can do so only by a misplaced reliance on outdated concepts.

13

multitudes of manufacturers do, that the product could be fatal if inhaled or ingested.[9]

A consumer has a legislatively given right to rely on product labeling in making purchasing decisions, and when a label does not warn of a material risk such as death, the consumer has a right to assume that the product does not pose that risk. By wording the statute the way it did, the Legislature attempted to ensure a consumer's ability to make an informed decision regarding whether to buy the product and how to handle the product after purchase. But warning of one risk is not warning of all, and the lack of warning of an obvious risk, such as illness, is not a warning of a hidden risk, such as death. By its clear words, the Legislature deemed it unnecessary for a manufacturer to warn of "a" material risk, e.g., illness, when that risk is obvious, but it in no way obviated the need to warn of a different material risk, i.e., death, that is hidden. Yet, after today, manufacturers need warn of nothing, as long as a consumer should know that *something* could happen as a result of misusing a product.

Thus, all hidden and unknown risks are now relegated to the realm of "common knowledge," and consumers must play a guessing game with the

---

[9] The majority's opinion is frighteningly far-reaching. For instance, one wonders whether manufacturers of toxic household products, such as bleach or ammonia, need no longer place any warnings on their products. I think this is the result because the majority would most likely conclude that anyone would know that accidentally drinking these products would cause illness. Thus, no warning that the products are fatal if ingested would be needed. Consumer protection has certainly taken two steps back today.

biggest risk being that their guess turns out to be fatal. Despite being given one by the Legislature, consumers now have no right to know of hidden risks that would have changed their decision-making process regarding the products they choose to buy.

For these reasons, I concur with Justice Kelly that plaintiff presented a genuine issue of material fact with respect to whether a reasonably prudent product user would have known that ingesting or inhaling Wonder 8 Hair Oil could prove fatal. This Court gravely errs by rewriting the law of products liability clearly set forth by the Legislature and thereby depriving plaintiff of an opportunity to seek redress for the death of her child. As such, I respectfully dissent.

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                                                                          No. 127718

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellants,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC, f/k/a PRO CARE BEAUTY
SUPPLY,

       Defendants-Appellees,

and

RAANI CORPORATION,

       Defendant.
_____

CHERYCE GREENE, as Personal
Representative of the Estate of
Keimer Easley, Deceased,

       Plaintiff-Appellee,

v                                                                                          No. 127734

A.P. PRODUCTS, LTD., and REVLON
CONSUMER PRODUCTS
CORPORATION,

       Defendants-Appellees,

and

SUPER 7 BEAUTY SUPPLY, INC.,
f/k/a PRO CARE BEAUTY SERVICE,
INC., f/k/a PRO CARE BEAUTY
SUPPLY,

              Defendants-Appellants,

and

RAANI CORPORATION,

              Defendant.

_____

KELLY, J. (*dissenting*).

I agree with the majority that MCL 600.2948(2) imposes a duty to warn that extends only to material risks not obvious to a reasonably prudent product user. I agree that the duty involves material risks that are not, or should not be, a matter of common knowledge to the person who was injured by the product. However, I disagree with the majority's determination that the risk of ingesting or aspirating Wonder 8 Hair Oil is, as a matter of law, obvious to a reasonably prudent product user. Hence, the trial court's grant of summary disposition to defendants should be reversed and the case remanded for further proceedings.

There is evidence that the plaintiff in this case was a reasonably prudent product user to whom the risk may not have been obvious. The Court of Appeals observed:

> In her deposition, plaintiff testified that she always kept her nail care products, e.g., polish and acrylic, in a locked case because she knew that they could be harmful if swallowed. She stated that most of these products displayed a warning to that effect. . . .

2

In an affidavit, plaintiff confirmed that she kept her nail care products in a locked case because of her knowledge that such products could be toxic. Additionally, she averred that . . . she stored all products that she knew to be toxic, such as bleach and ammonia, in a locked cabinet. Plaintiff asserted that, generally, it was her habit to read product labels because she had two small children. [*Greene v A P Products*, 264 Mich App 391, 396; 691 NW2d 38 (2004).]

Manufacturers and sellers must disclose safety-related information when they know or should know that the buyer or user is unaware of that information. *Glittenberg v Doughboy Recreational Industries (On Rehearing),* 441 Mich 379, 386; 491 NW2d 208 (1992). The Wonder 8 Hair Oil container did not bear any warning that it should be kept out of the reach of children or that it was toxic and potentially fatal, let alone harmful. It provided no information about how to respond to accidental ingestion or aspiration.

Nonetheless the majority concludes that the statute imposes "no duty to warn beyond obvious material risks" or "to warn of a specific type of injury that could result from a risk." *Ante* at 9. The majority acknowledges that the Court of Appeals "properly applied an objective standard in determining the suitability of the warning," but goes on to fault that Court's determination that it could not conclude that "'as a matter of law, *the risk of death* from the ingestion of Wonder 8 Hair Oil would be obvious to a reasonably prudent product user and be a matter of common knowledge, especially considering the lack of *any* relevant warning.'" *Ante* at 9, quoting *Greene* at 401 (emphasis in the majority opinion).

3

No duty to warn exists where the consumer is in just as good a position as the manufacturer to gauge the dangers associated with the product. *Glittenberg* at 386. I do not believe that the consumer is in as good a position as the manufacturer to realize that Wonder 8 Hair Oil can cause death.

Plaintiff presented sufficient evidence to raise a question of material fact concerning whether the material risk of death from ingesting or aspirating Wonder 8 Hair Oil is open and obvious. Rather than allowing the jury to determine the adequacy of the general warning on the product, the majority makes the decision for itself. And it fails to consider the evidence in the light most favorable to the plaintiff, as it must. It concludes that there is no need for any warning whatsoever.

The majority dismisses the product label's inclusion of "eight natural oils" and simply asserts that "[i]t should be obvious to a reasonably prudent product user that many oils, although natural, pose a material risk if ingested or inhaled." *Ante* at 11. It also concludes that, "[g]iven such unfamiliar ingredients, a reasonably prudent product user would be, or should be, loath to ingest it." *Id.* at 12.

I disagree. The vast majority of the ingredients listed on the label are seemingly edible food products. They include avocado oil, coconut oil, and wheat germ oil. Also, the label contains a number of safely ingestible herbs: rosemary, sage, angelica root, licorice root, Job's tears, cedar, clove, lemon balm, and chamomile. In addition, the product label announces that it contains Vitamins E, A, and D. None of these ingredients alerts a reasonably prudent product user to

4

the fatal result of ingesting them.  On the contrary, they seem harmless and inviting.

I agree with the Court of Appeals that reasonable minds can differ on whether the danger presented by swallowing or inhaling Wonder 8 Hair Oil is open and obvious.  As that Court concluded:

> Whether plaintiff was aware of the specific danger of serious harm or death, i.e., knowledgeable of the true extent of the risk, remembering the lack of any warning and considering the listed ingredients, is a question for the jury to resolve, not a court as a matter of law, in light of the documentary evidence presented. [*Greene* at 404.]

## CONCLUSION

Here, the majority improperly holds as a matter of law that Wonder 8 Hair Oil's material fatal risk was open and obvious.  It finds that all reasonable users of this product should be aware that swallowing or inhaling it can result in death.  Like the Court of Appeals, I do not believe that is true.  The question whether the material risk is open and obvious is for the jury to decide.

I would reverse the trial court's grant of summary disposition to defendants and remand the case to the trial court for further proceedings.

Marilyn Kelly

5